BOEING CO. *v.* VAN GEMERT ET AL.

No. 78–1327.  Argued December 3, 1979—Decided February 19, 1980

Powell, J., delivered the opinion of the Court, in which Burger, C. J., and Brennan, Stewart, White, Marshall, Blackmun, and Stevens, JJ., joined. Rehnquist, J., filed a dissenting opinion, *post,* p. 482.

*S. Hazard Gillespie* argued the cause for petitioner. With him on the briefs were *Sheila T. McMeen* and *Bruce A. Baird.*

*Norman Winer* argued the cause for respondents and filed a brief for certain respondents. *Stuart D. Wechsler, Samuel K. Rosen,* and *Samuel Weinstein* filed a brief for other respondents.*

Mr. Justice Powell delivered the opinion of the Court.

The question presented in this class action is whether a proportionate share of the fees awarded to lawyers who represented the successful class may be assessed against the unclaimed portion of the fund created by a judgment.

---

*_George J. Solleder, Jr.,_ Special Master, *pro se,* filed a brief as *amicus curiae.*

I

In March 1966, The Boeing Co. called for the redemption of certain convertible debentures. Boeing announced the call through newspaper notices and mailings to investors who had registered their debentures. The notices, given in accordance with the indenture agreement, recited that each $100 amount of principal could be redeemed for $103.25 or converted into two shares of the company's common stock. They set March 29 as the deadline for the exercise of conversion rights. Two shares of the company's common stock on that date were worth $316.25. When the deadline expired, the holders of debentures with a face value of $1,544,300 had not answered the call. These investors were left with the right to redeem their debentures for slightly more than face value.

Van Gemert and several other nonconverting debenture holders brought a class action against Boeing in the United States District Court for the Southern District of New York. They claimed that Boeing had violated federal securities statutes as well as the law of New York by failing to give them reasonably adequate notice of the redemption. As damages, they sought the difference between the amount for which their debentures could be redeemed and the value of the shares into which the debentures could have been converted. The District Court dismissed the action on the ground that Boeing had given its debenture holders the notice required by the indenture agreement. The Court of Appeals for the Second Circuit reversed and remanded. It held that, under the New York law of contracts, the indenture agreement contained an implied obligation to give debenture holders reasonable notice of a redemption. The court concluded that the notice actually given was inadequate. 520 F. 2d 1373, cert. denied, 423 U. S. 947 (1975).

On remand, the District Court awarded as damages the difference between the redemption price of the outstanding debentures and the price at which two shares of Boeing's

common stock traded on the last day for exercising conversion rights. The court, however, refused to assess prejudgment interest against Boeing. There followed a second appeal. The class claimed that the stock should have been valued as of a later date and that Boeing was liable for prejudgment interest. Class members who had filed individual claims also contended that they were entitled to receive pro rata shares of any unclaimed damages. At the least, they argued, they should receive enough of the unclaimed money to pay their legal expenses.

The Court of Appeals found the class entitled to prejudgment interest on the award, but it approved the valuation date. The court also concluded that class members who proved their individual claims should not share in the unclaimed portion of the judgment. Allowing these class members to receive a proportionate part of the unclaimed money, the court held, would create the sort of "fluid class" recovery rejected in *Eisen* v. *Carlisle & Jacquelin,* 479 F. 2d 1005 (CA2 1973), vacated and remanded on other grounds, 417 U. S. 156 (1974). Such a recovery would expropriate funds belonging to class members who had not asserted their claims and give a windfall to those who had claimed. Finally, the court decided that claiming class members could not use the unclaimed portion of the judgment to defray their legal expenses. Since Boeing could have a right to money that never was claimed, the court thought that awarding attorney's fees from the remaining funds might shift fees to the losing party in violation of the American rule reaffirmed in *Alyeska Pipeline Service Co.* v. *Wilderness Society,* 421 U. S. 240 (1975). 553 F. 2d 812 (1977).

On the second remand, the District Court entered the judgment now at issue. The court first established the amount of Boeing's liability to the class as a whole. It provided that respondents, "in behalf of all members of the plaintiff class, . . . shall recover as their damages . . . the principal sum

of $3,289,359 together with [prejudgment] interest. . . ." App. 40a.[1] The court then fixed the amount that each member of the class could recover on a principal amount of $100 in debentures. Each individual recovery was to carry its proportionate share of the total amount allowed for attorney's fees, expenses, and disbursements.[2] That share, the court declared, "shall bear the same ratio to all such fees, expenses and disbursements as such class member's recovery shall bear to the total recovery" awarded the class. *Id.*, at 40a–41a. Finally, the court ordered Boeing to deposit the amount of the judgment into escrow at a commercial bank,[3] and it appointed a Special Master to administer the judgment and pass on the validity of individual claims.[4] The court retained jurisdiction pending implementation of its judgment.

---

[1] The relevant paragraph of the District Court's judgment declares in full:

"ORDERED, ADJUDGED AND DECREED that plaintiffs in behalf of all members of the plaintiff class, which consists of all holders on March 29, 1966 of 4½% Convertible Subordinated Debentures of the Boeing Company who failed to exercise their conversion right before it terminated on March 29, 1966, shall recover as their damages herein from the defendants the principal sum of $3,289,359 together with interest thereon at the legal rates fixed by the State of New York, N. Y. C. P. L. R. § 5001 (a) from March 9, 1966 to the date of this judgment, with costs to be taxed. . . ." App. 40a.

[2] The class lawyers have requested fees totaling about $2 million. 573 F. 2d 733, 735, n. 3 (1978) (panel opinion).

[3] Interest on the principal sum of $3,289,359 from the conversion deadline to the date of judgment amounted to $2,459,647, bringing the judgment to $5,749,006. With income earned on investments and other additions, the fund now totals over $7 million. Brief for Special Master as *Amicus Curiae* 4–6.

[4] The District Court gave the Special Master a broad mandate to "direct the parties in the necessary ministerial steps to effectuate the Judgment, receive all proofs of claim to participate in the Fund established by the Judgment, pass on the validity of same, direct the giving of notices to interested persons of hearings on disputed claims, conduct the

Boeing appealed only one provision of the judgment. It claimed that attorney's fees could not be awarded from the unclaimed portion of the judgment fund for at least two reasons. First, the equitable doctrine that allows the assessment of attorney's fees against a common fund created by the lawyers' efforts was inapposite because the money in the judgment fund would not benefit those class members who failed to claim it. Second, because Boeing had a colorable claim for the return of the unclaimed money, awarding attorney's fees from those funds might violate the American rule against shifting fees to the losing party. Therefore, Boeing contended, the District Court should award attorney's fees from only the portion of the fund actually claimed by class members. A panel of the Court of Appeals agreed with Boeing, 573 F. 2d 733 (1978), but the court en banc affirmed the District Court's judgment, 590 F. 2d 433 (1978).

The Court of Appeals en banc found that each class member had a "present vested interest in the class recovery" and that each could collect his share of the judgment upon request.

necessary hearings, submit reports thereon and in general supervise the administration of the Judgment and decide all disputed questions of law and fact connected therewith subject to confirmation by the Court. . . ." App. 42a.

In the year following his appointment, the Special Master mailed notices to debenture holders who could be identified and published notices in two national newspapers. By July 15, 1978, the Special Master had received claims accounting for $290,000 worth of the $1,544,300 in unconverted debentures. Brief for Special Master as *Amicus Curiae* 11. The District Court then extended the time for filing proofs of claims, and the Master renewed his efforts to locate holders of the remaining debentures. Further research in files kept by the trustee under the indenture agreement revealed the identity of additional debenture holders. A professional search firm endeavored to trace holders who had relocated. Banks and brokerage houses also were furnished with information that might help them to locate clients who had invested in the debentures. As of July 18, 1979, shortly before he filed his brief with this Court, the Master had received claims accounting for $706,600 worth of debentures or about 47% of the unconverted securities. *Id.*, at 14.

Thus, the court held, absentee class members had received a benefit within the meaning of the common-fund doctrine. *Id.,* at 439. The court also found its holding consistent with the American rule. It noted that lawyers for the class would receive their fees "from the amount for which Boeing has *already* been held liable. There is no 'surcharge' on the defeated litigant." *Id.,* at 441–442. We granted certiorari, 441 U. S. 942 (1979), and we now affirm.

## II

Since the decisions in *Trustees* v. *Greenough,* 105 U. S. 527 (1882), and *Central Railroad & Banking Co.* v. *Pettus,* 113 U. S. 116 (1885), this Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole. See *Mills* v. *Electric Auto-Lite Co.,* 396 U. S. 375 (1970); *Sprague* v. *Ticonic National Bank,* 307 U. S. 161 (1939); cf. *Hall* v. *Cole,* 412 U. S. 1 (1973). The common-fund doctrine reflects the traditional practice in courts of equity, *Trustees* v. *Greenough, supra,* at 532–537, and it stands as a well-recognized exception to the general principle that requires every litigant to bear his own attorney's fees, *Alyeska Pipeline Service Co.* v. *Wilderness Society,* 421 U. S., at 257–258. The doctrine rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense. See, *e. g., Mills* v. *Electric Auto-Lite Co.,* 396 U. S., at 392. Jurisdiction over the fund involved in the litigation allows a court to prevent this inequity by assessing attorney's fees against the entire fund, thus spreading fees proportionately among those benefited by the suit. See *id.,* at 394.

In *Alyeska Pipeline Service Co.* v. *Wilderness Society, supra,* we noted the features that distinguished our common-fund cases from cases where the shifting of fees was inappropriate. First, the classes of persons benefited by the lawsuits "were

small in number and easily identifiable." 421 U. S., at 265, n. 39. Second, "[t]he benefits could be traced with some accuracy. . . ." *Ibid.* Finally, "there was reason for confidence that the costs [of litigation] could indeed be shifted with some exactitude to those benefiting." *Ibid.* Those characteristics are not present where litigants simply vindicate a general social grievance. *Id.*, at 263–267, and n. 39. On the other hand, the criteria are satisfied when each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump-sum judgment recovered on his behalf. Once the class representatives have established the defendant's liability and the total amount of damages, members of the class can obtain their share of the recovery simply by proving their individual claims against the judgment fund. This benefit devolves with certainty upon the identifiable persons whom the court has certified as members of the class. Although the full value of the benefit to each absentee member cannot be determined until he presents his claim, a fee awarded against the entire judgment fund will shift the costs of litigation to each absentee in the exact proportion that the value of his claim bears to the total recovery. See generally Dawson, Lawyers and Involuntary Clients in Public Interest Litigation, 88 Harv. L. Rev. 849, 916–922 (1975).

In this case, the named respondents have recovered a determinate fund for the benefit of every member of the class whom they represent. Boeing did not appeal the judgment awarding the class a sum certain.[5] Nor does Boeing contend

---

[5] Boeing contends that the judgment in this case was simply a procedural device ordering Boeing to pay into escrow its maximum potential liability to the class. The judgment will not be final, Boeing argues, until absentee class members have presented their individual claims. Thus, Boeing concludes, the judgment fund confers no benefit on class members who fail to claim against it. Brief for Petitioner 25–26, and n. *.

We think that Boeing misreads the judgment. The District Court explicitly ordered that "plaintiffs in behalf of all members of the plaintiff

that any class member was uninjured by the company's failure adequately to inform him of his conversion rights. Thus, the damage to each class member is simply the difference between the redemption price of his debentures and the value of the common stock into which they could have been converted. To claim their logically ascertainable shares of the judgment fund, absentee class members need prove only their membership in the injured class. Their right to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel. Unless absentees contribute to the payment of attorney's fees incurred on their behalves, they will pay nothing for the creation of the fund and their representatives may bear additional costs. The judgment entered by the District Court and affirmed by the Court of Appeals rectifies this inequity by requiring every member of the class to share attorney's fees to the same extent that he can share the recovery.[6] Since the benefits of the class

---

class . . . shall recover as their damages herein from the defendants the principal sum of $3,289,359 together with interest. . . ." See n. 1, *supra.* Nothing in the court's order made Boeing's liability for this amount contingent upon the presentation of individual claims. Thus, we need not decide whether a class-action judgment that simply requires the defendant to give security against all potential claims would support a recovery of attorney's fees under the common-fund doctrine.

We also think that Boeing's arguments come too late. Although the District Court did not fix the amount of attorney's fees to be assessed against absentee class members, its judgment terminated the litigation between Boeing and the class concerning the extent of Boeing's liability. See *Swanson* v. *American Consumer Industries, Inc.,* 517 F. 2d 555, 559–561 (CA7 1975). This is not a case, like *Liberty Mutual Ins. Co.* v. *Wetzel,* 424 U. S. 737 (1976), where a prayer for attorney's fees against an opposing party remains unanswered. See *Richerson* v. *Jones,* 551 F. 2d 918, 921–922 (CA3 1977). Thus, the judgment awarding the class a fixed recovery was final and appealable. Since Boeing did not appeal it, we cannot now consider whether the judgment was in error.

[6] Since an award of attorney's fees under the common-fund doctrine simply relieves claiming class members of costs incurred for the benefit

recovery have been "traced with some accuracy" and the costs of recovery have been "shifted with some exactitude to those benefiting," *Alyeska Pipeline Service Co.* v. *Wilderness Society, supra,* at 265, n. 39, we conclude that the attorney's fee award in this case is a proper application of the common-fund doctrine.

## III

The common-fund doctrine, as applied in this case, is entirely consistent with the American rule against taxing the losing party with the victor's attorney's fees. See *Alyeska Pipeline Service Co.* v. *Wilderness Society, supra,* at 247. The District Court's judgment assesses attorney's fees against a fund awarded to the prevailing class. Since there was no appeal from the judgment that quantified Boeing's liability, Boeing presently has no interest in any part of the fund.[7] The members of the class, whether or not they assert their

---

of others, we see no merit in Boeing's contention that the award amounts to a "fluid class" recovery. See Tr. of Oral Arg. 20. Here, as in *Eisen* v. *Carlisle & Jacquelin,* 417 U. S. 156, 172, n. 10 (1974), we express no opinion on the validity of judgments permitting such recoveries.

[7] Although we recognize that this 14-year-old case has had a fractured career in the courts, we do not agree with MR. JUSTICE REHNQUIST's dissenting view that the judgment before us lacks finality. *Post,* at 482. The District Court's judgment first ordered Boeing to pay a specified sum to the entire class and then assessed undetermined attorney's fees against the entire fund created by the judgment. The judgment on the merits stripped Boeing of any present interest in the fund. Thus, Boeing had no cognizable interest in further litigation between the class and its lawyers over the amount of the fees ultimately awarded from money belonging to the class. But Boeing did have an interest, arising from its colorable claim for the return of excess money, in whether attorney's fees could be assessed against the entire fund rather than against the portion actually claimed. Since the District Court's order assessed attorney's fees against the entire fund, it was a final judgment on the only issue in which Boeing still had an interest. In the peculiar circumstances of this case, Boeing could secure review of the allocation of fees only by appealing from this adverse judgment.

rights, are at least the equitable owners of their respective shares in the recovery. Any right that Boeing may establish to the return of money eventually unclaimed is contingent on the failure of absentee class members to exercise their present rights of possession.[8] Although Boeing itself cannot be obliged to pay fees awarded to the class lawyers, its latent claim against unclaimed money in the judgment fund may not defeat each class member's equitable obligation to share the expenses of litigation.

The judgment of the Court of Appeals is

*Affirmed.*

MR. JUSTICE REHNQUIST, dissenting.

In disposing of this case on the merits, the Court gives short shrift to the question of appealability, a threshold issue by no means free from doubt even under the most generous view of our decided cases. I have concluded from these cases, viewed in light of the longstanding policy of the federal judicial system against piecemeal appeals, that the judgment now before us lacks the finality required by 28 U. S. C. § 1291, and I would therefore remand this case to the Court of Appeals with instructions to dismiss Boeing's appeal. Exhibit "A" of the shortsightedness of the Court's sloughing off the issue of appealability as it does is the fact that the parties are obliged to refer to the present case not merely as *"Van Gemert,"* but as *"Van Gemert III."* This case, which began in March 1966, has been appealed to the Court of Appeals for the Second Circuit three times, and now, after 14 years of litigation, this Court affirms the third decision of the Court of Appeals.

There is no doubt as to the appealability of the first of the three decisions of the District Court, since it dismissed

---

[8] The Court of Appeals did not consider the ultimate disposition of whatever money may remain in the fund after the District Court enforces a deadline for the presentation of individual claims. 590 F. 2d 433, 440, n. 17 (1978). We likewise express no opinion on that question.

respondents' complaint with prejudice. The second appeal was also by respondents from a determination by the District Court that respondents were not entitled to any prejudgment interest; this decision was also reversed by the Court of Appeals. Following this second remand, the District Court entered a "Judgment and Order" stating that Boeing was liable to respondent class in the amount of $3,289,359 plus interest, ordering Boeing to pay this amount into escrow, and indicating that respondents' attorneys could recover their fees "out of said total amount of this judgment." At this point, Boeing appealed for the first time, asserting that respondents' attorneys should collect their fees only out of that portion of the fund actually claimed. As noted by the Court, the Court of Appeals en banc affirmed this aspect of the District Court's order.

The novelty of the question posed by Boeing is attributable in large part to the historic prevalence of the "American rule," which generally prevents a court from requiring the losing party to pay the prevailing party's attorney's fees. In recent years, however, the proliferation of class actions and the enactment of various statutes modifying the American rule [1] have multiplied the opportunities for recovering attorney's fees and have simultaneously spawned a great deal of litigation over assessment of those fees. These developments lend added significance to the procedural implications of our decisions in this area.

In the typical American-rule case, the federal judicial system, by statute and rule, has generally made a final order a prerequisite to appellate review. A judgment is not considered final, and therefore appealable, until the district court has completed all but the most ministerial acts. Arguably,

---

[1] See, e. g., 5 U. S. C. § 552 (a) (4) (E) (permitting award of attorney's fees in actions brought under Freedom of Information Act); 15 U. S. C. § 1691e (d) (suits under Equal Credit Opportunity Act); 42 U. S. C. § 2000e–5 (k) (Title VII suits under Civil Rights Act of 1964); 42 U. S. C. § 1988 (civil-rights suits).

litigation necessitating an award of attorney's fees should be treated no differently. It would be quite reasonable, I believe, to postpone appeal in such cases until the District Court had entered judgment not only on liability and damages, but also on whether and in what amount attorney's fees will be assessed. Cf. *Liberty Mutual Ins. Co.* v. *Wetzel,* 424 U. S. 737 (1976) (dismissing appeal from judgment of liability in Title VII action under Civil Rights Act of 1964 where requests for injunction, damages, and attorney's fees remained pending in the District Court).

For better or for worse, the little precedent that exists in this area has tended to deviate from such a sensible approach. This deviation has been particularly noticeable when the right to attorney's fees has been based on the existence of a "common fund" such as that discussed in the opinion of the Court. Beginning with *Trustees* v. *Greenough,* 105 U. S. 527 (1882), the Court has evidenced a willingness to treat the division of the common fund as a separate piece of litigation for purposes of appeal. In *Greenough,* for example, this Court entertained an appeal from an order allowing a successful plaintiff bondholder to recover attorney's fees even though the original action remained pending in the trial court for purposes of administration. The Court stated that the award of fees, "though incidental to the [original] cause," was sufficiently "collateral," "distinct," and "independent," to be appealable in its own right. *Id.,* at 531.

From *Greenough* it was an analytically short, though temporally long, step to the decision of the Court of Appeals for the Seventh Circuit in *Swanson* v. *American Consumer Industries, Inc.,* 517 F. 2d 555 (1975). In that shareholders' derivative suit, the District Court entered judgment in favor of plaintiffs and awarded damages. Seven months later it granted attorney's fees to prevailing counsel under an "extension" of *Greenough.* 517 F. 2d, at 560. Two notices of appeal were filed from this latter order, one on behalf of

plaintiffs challenging the amount of damages and the other on behalf of plaintiffs and their attorneys challenging the amount of attorney's fees. The Court of Appeals dismissed the appeal on the question of damages as untimely, reasoning that the District Court's determination of damages was final, and therefore appealable, upon entry of the first order.

*Greenough* and *Swanson* represent two sides of the same coin. If an attorney's attempt to secure fees from the common fund is "collateral" enough to support an independent appeal despite the continued pendency of the main litigation,[2] then the judgment establishing the fact and amount of the defendant's liability in the main litigation should also support a separate appeal despite the continued pendency of a dispute over division of the fund between the beneficiaries and their attorneys.[3]

---

[2] See also *Sprague* v. *Ticonic National Bank*, 307 U. S. 161, 169 (1939) (claim for fees out of common fund "sufficiently different" from parent claim to support separate appeal); *Preston* v. *United States*, 284 F. 2d 514 (CA9 1960) (attorney's appeal from District Court's refusal to award fees on common-fund theory); *Angoff* v. *Goldfine*, 270 F. 2d 185 (CA1 1959) (attorney's appeal from District Court's refusal to grant him fees out of settlement fund).

[3] Outside the common-fund context, the consensus in the lower courts over the permissibility of bifurcated appeals dissolves. Two Courts of Appeals, including the Seventh Circuit, appear to have carried the *Greenough/Swanson* approach over into cases where one party recovers attorney's fees directly from an opposing party. In *Hidell* v. *International Diversified Investments*, 520 F. 2d 529 (CA7 1975), for example, appellee had brought suit under the securities laws. The District Court entered a judgment granting appellee an injunction, damages, and "reasonable" attorney's fees. The Court of Appeals, citing *Swanson*, allowed the defendant to appeal the merits of the dispute prior to the actual determination of those fees.

In *Lowe* v. *Pate Stevedoring Co.*, 595 F. 2d 256, 257 (CA5 1979), the plaintiff had prevailed on the merits of an unfair-representation suit against his union. The District Court granted plaintiff's attorney fees as the result of the union's "bad faith," but denied plaintiff's attorney a lien against the union to secure his fee. The Court of Appeals, relying on

Implicit in this bifurcated approach to appealability in common-fund cases is a strict bifurcation of the issues that can be litigated in either appeal. Thus, this Court would not have permitted the trustees in *Greenough* to contest in their appeal the merits of the dispute that generated the common fund. Nor, I venture, would the Court of Appeals for the Seventh Circuit have allowed a timely appeal on the issue

---

*Swanson, Preston* v. *United States, supra,* and *Cohen* v. *Beneficial Industrial Loan Corp.,* 337 U. S. 541 (1949), allowed the attorney to prosecute his appeal even though his client's prayer for reinstatement remained pending in the District Court. To the extent that the Fifth Circuit treats such an appeal as severable from the main cause of action, it might also treat an appeal from the main litigation as severable from the attorney's-fees proceeding.

Two other Courts of Appeals have rejected the bifurcated model of appealability in non-common-fund cases. In *Richerson* v. *Jones,* 551 F. 2d 918, 922 (1977), the Third Circuit confronted an appeal by the United States from a judgment of liability in a discrimination suit. The District Court's order had awarded plaintiff promotion, backpay, and interest, but had not yet ruled on plaintiff's request for attorney's fees. In holding that the United States had not appealed from a final order, the Court of Appeals relied upon *Liberty Mutual Ins. Co.* v. *Wetzel,* 424 U. S. 737 (1976), and distinguished *Swanson* as a case where plaintiff was not seeking to collect fees from his adversary.

Employing similar analysis, the Second Circuit twice has held that, where the obligation to pay an opposing party's attorney's fees arises out of an agreement that is also the subject of the original litigation, the attorney's-fees issue is not sufficiently collateral to allow appeal from a judgment on the merits prior to a determination of the attorney's fees. See *Aetna Casualty & Surety Co.* v. *Giesow,* 412 F. 2d 468 (1969) (suit for breach of subordination agreement); *Union Tank Car Co.* v. *Isbrandtsen,* 416 F. 2d 96 (1969) (suit to enforce settlement agreement). Judge Friendly has attempted to reconcile *Giesow* with the common-fund cases. See *Cinerama, Inc.* v. *Sweet Music, S. A.,* 482 F. 2d 66, 70, n. 2 (CA2 1973). See also *Union Tank Car Co.* v. *Isbrandtsen, supra,* at 97.

This overview is offered only to illustrate the complexity of this issue. Perhaps all these cases·can be reconciled in some principled manner; if not, it is only a matter of time before this Court will have to try its hand at an issue that obviously has been perplexing other federal courts. In the meantime, I believe that we should tread quite carefully in this area.

of damages to challenge the amount of attorney's fees assessed, an issue that was the subject of a later, separate appeal. In each case, appellant would be powerless to reach backward or forward from the "collateral" proceeding to the "merits" of the lawsuit.

But this is exactly what the Court permits Boeing to do in this case. Assuming, as seems likely, that the *Greenough/ Swanson* model of bifurcated appealability will prevail, I have no doubt that Boeing could have appealed, at this stage of the proceedings, from the judgment that it was liable to the plaintiff class in the amount of $3,289,359 plus interest. But as the Court concedes, indeed stresses, Boeing has not challenged either the fact of liability or the amount. See *ante,* at 479–480, n. 5. Such an appeal must have appeared futile in light of *Van Gemert I,* 520 F. 2d 1373 (1975), which established liability, and *Van Gemert II,* 553 F. 2d 812 (1977), which established the precise amount of damages payable to each member of the class. Instead, Boeing relies on the "finality" of the District Court's judgment on the merits, the *Swanson* side of the coin, to prosecute an appeal on the division of the common fund, the *Greenough* side of the coin. As noted above, such crisscrossing of contentions is inconsistent with a bifurcated approach to appellate litigation in common-fund cases.

Even if Boeing is to be allowed to appeal under the "collateral order" rubric in this case, the order from which it appealed was not final even under that doctrine. *Greenough* itself noted that the trustees brought their appeal from "a *final* determination of the particular matter arising upon the complainant's petition for allowances. . . ." 105 U. S., at 531 (emphasis added). Similarly, *Cohen* v. *Beneficial Industrial Loan Corp.,* 337 U. S. 541 (1949), which formalized the "collateral order" doctrine presaged in *Greenough,* requires that the order appealed from be the "*final* disposition of a claimed right which is not an ingredient of the cause of action and does not require consideration with it." 337 U. S., at 546–547 (em-

phasis added). In this case, however, that portion of the litigation involving the attorney's fees is still in its most nascent phase. We do not know, for example, when these fees are going to be assessed, how they will be calculated, or what will become of that portion of the fund that is neither claimed nor paid out in fees.

Nowhere does this lack of finality manifest itself more than in the Court's holding that Boeing has standing to litigate over the division of the spoils even though it may not have any continuing interest whatsoever in the money held in escrow.[4] In allowing Boeing to base its appeal on a "colorable claim for the return of [any] excess," *ante,* at 481, n. 7, the Court comes dangerously close to assuming in a single phrase that Boeing has standing. At best this analysis is unnecessary, since final settlement of the conflicting claims to the fund would establish Boeing's standing once and for all. At worst it represents a dangerous dilution of the standing requirement. In any event, the anticipatory nature of the analysis necessary to reach the merits of Boeing's appeal buttresses the notion that the Court is using a dubious technique to gloss over a lack of finality.

The procedural implications of our decision today will, I fear, have a more far-reaching effect than the decision on the

---

[4] Boeing's only interest in the funds now held in escrow is its assertion that the unclaimed portion of the judgment eventually will revert to it. But respondents have argued with some force that the unclaimed funds will eventually escheat to the State of New York. See N. Y. Aband. Prop. Law § 1200 (McKinney 1944). In fact, the Attorney General of New York already has presented such a claim to the District Court. See Brief for Respondents filed by Stuart D. Wechsler 23. If the Attorney General and respondents are correct, then Boeing has no more standing to press its appeal than would a losing defendant have standing to contest the division of an award between plaintiff and his attorney pursuant to a contingent-fee arrangement.

Although respondents have not challenged Boeing's standing, we are obligated to consider the issue *sua sponte,* if necessary. See, *e. g., Juidice* v. *Vail,* 430 U. S. 327, 331 (1977).

propriety of the application of the common-fund rule for allowing fees. Were I an attorney representing a party in common-fund litigation at a juncture similar to that encountered by Boeing prior to its appeal, I would be quite confused about the propriety of an immediate appeal, either on the merits of the main cause of action or on the details of an impending assessment of fees. Fearful that, by waiting for a "final order" in the strict sense, I might forfeit my right to appeal certain aspects of the litigation, cf. *Swanson* v. *American Consumer Industries, Inc.,* I probably would err in favor of filing an immediate appeal on whatever aspects of the case were bothersome at that time.[5] From the standpoint of the federal appellate courts, such uncertainty can only result in numerous interlocutory, precautionary appeals.

In sum, I believe that the District Court's order on the division of the "common fund" lacks the finality necessary to support Boeing's appeal, and would remand this matter to the Court of Appeals with instructions to dismiss the appeal. I therefore dissent.

---

[5] The potential for confusion is even greater outside the context of common-fund litigation. See n. 3, *supra.*