CITIZENS ACTION COALITION OF INDIANA, INC., Appellants–Intervenors,

v.

NORTHERN INDIANA PUBLIC SERVICE COMPANY, et al., Appellees–Respondent, Intervenors, and Statutory Party.

No. 93A02–0308–EX–659.

Court of Appeals of Indiana.

July 27, 2004.

Jerome E. Polk, Michael A. Mullett, Mullett, Polk & Associates, LLC, Indianapolis, IN, Attorneys for Appellants Citizens Action Coalition of Indiana, Inc.

Robert W. Wright, Rick D. Doyle, Doyle, Wright & Dean–Webster, LLP, Greenwood, IN, Shaw R. Friedman, Friedman & Associates, P.C., LaPorte, IN, Attorneys for Appellants Fourteen Individual Intervenors.

Daniel W. McGill, Barnes & Thornburg, Peter L. Hatton, Baker & Daniels, Indianapolis, IN, Attorneys for Appellees Northern Indiana Public Service Company.

John F. Wickes, Jr., Todd A. Richardson, Lewis & Kappes, Indianapolis, IN, Attorneys for Appellees NIPSCO Industrial Group.

Anne E. Becker, Randall C. Helmen, Office of Utility Consumer Counselor, Indianapolis, IN, Attorneys for Appellee Office of Utility Consumer Counselor.

Michael J. Melliere, Nancy A. White, Squire, Sanders & Dempsey, Columbus, OH, Attorneys for Appellee Indiana Harbor, Inc.

### OPINION

BAKER, Judge.

Appellants-intervenors Citizens Action Coalition of Indiana, Inc. (CAC) appeals an order from the Indiana Utility Regulatory Commission (IURC) awarding $1,105,857.80 in attorney fees, costs, and expenses to the Northern Indiana Public Service Company Industrial Group (Industrials)—a consortium of industrial electricity customers of the Northern Indiana Public Service Company (NIPSCO)—earned by the Industrials for participating in an investigation by the IURC. Specifically, CAC claims that the IURC's order does not meet the criteria established by Indiana courts with respect to payment of attorney fees from a "common fund." Additionally, CAC argues that even if a "common fund" exists from which to award attorney fees, the IURC unlawfully limited eligibility of attorney fees to signatories of a settlement reached in the IURC investigation. Finally, CAC contends that the IURC erroneously denied its request to conduct discovery with respect to the negotiations that resulted in the fee provisions of the settlement. Concluding that the funds in the escrow account comprise a common fund, that CAC's argument with respect to attorney fees from the fund for non-signatories to the agreement is not ripe for review, and that the IURC did not err when it denied CAC's discovery requests, we affirm the IURC's order.

### FACTS

The initial litigation in this cause is detailed in *Citizens Action Coalition of Indiana v. Northern Indiana Pub. Serv. Co.*, 796 N.E.2d 1264 (Ind.Ct.App.2003), *t'fer denied.* Briefly, NIPSCO, the Industrials, the Office of the Utility Consumer Counselor (OUCC), and the IURC agreed to a settlement whereby $225 million would be returned to utility consumers through a credit mechanism. As part of the settlement, NIPSCO was to set aside $1.8 million of the $225 million in an escrow account, and the IURC had discretion to award amounts from this account to parties who materially participated in the crafting of the settlement. CAC opposed the settlement and appealed to this court. On October 14, 2003, we affirmed the IURC's order approving the settlement.

This round of litigation involves the $1.8 million set aside by NIPSCO. The Industrials filed a motion for attorney fees on February 7, 2003. CAC objected to the award of attorney fees, stating that any

award of fees would be unlawful unless the IURC found that attorney fee awards were being made from a "common fund" as opposed to a "common benefit." CAC filed document requests and sought the deposition of John F. Wickes, Jr., the Industrials' attorney. Wickes, on the advice of counsel, declined CAC's requests. On March 7, 2003, CAC filed a motion to compel discovery, which the IURC denied.

On July 2, 2003, the IURC awarded the Industrials approximately $1.1 million in attorney fees from the escrow fund after finding that the Industrials had provided valuable services in the underlying litigation and materially contributed to the creation of the $225 million in credits. Thirteen individuals [1] who had intervened in the original action filed a petition for reconsideration with the IURC on July 22, 2003, asking the IURC to make additional findings. The IURC issued a docket entry on September 18, 2003, denying the individuals' request. CAC now appeals.

## DISCUSSION

### I. Existence of Common Fund

CAC's initial complaint, though somewhat esoteric, seems to be that the IURC's order does not include the findings necessary to recognize the right to attorney fees under a "common fund" theory. Thus, CAC claims that the IURC awarded attorney fees under a "common benefit" theory, a scheme that CAC states no longer exists in Indiana.

Before addressing CAC's claim, a discussion of the difference between the "common fund" and "common benefit" theories is useful. While Indiana follows the American Rule, requiring parties to pay their own legal expenses, some exceptions

to the rule exist. *State Bd. of Tax Com'rs v. Town of St. John,* 751 N.E.2d 657, 658 (Ind.2001).

### A. Common Fund

One such exception is the "common fund" doctrine, which provides that an "award of attorneys' fees is allowed to be paid from a common fund on the theory that those who benefit from the creation of the fund or from the creation of any other legal benefit should share in the expense of producing the benefit." *Northern Indiana Pub. Serv. Co. v. Citizens Action Coalition of Indiana,* 548 N.E.2d 153, 161 (Ind.1989). Not surprisingly, the hallmarks of a "common fund" are (1) that it is "common" and (2) that a "fund," or source of funds, exists. *Comm. Care Ctrs., Inc. v. Indiana Fam. & Soc. Serv. Admin.,* 716 N.E.2d 519, 546–48 (Ind.Ct.App.1999). A "fund" exists if there are "ascertainable benefits given to an ascertainable number of beneficiaries." *Id.* at 547.

A fund is "common" if the following three criteria are met:

(1) " '[T]he classes of persons benefited by the lawsuits "were small in number and easily identifiable." ' " *Id.* (quoting *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478–79, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980)).

(2) " '[T]he benefits [to the persons benefited can] be traced with some accuracy.' " *Id.*

(3) " '[T]here was reason for confidence that the costs [of litigation] could indeed be shifted with some exactitude to those benefiting.' " *Id.*

### B. Common Benefit

While CAC argues that "the 'common benefit' theory ... is simply contrary to

---

1. In the original action, fourteen individuals intervened. The whereabouts of the fourteenth individual are unaccounted for in the record. Regardless of this fact, however, the individuals did not take part in appeal.

law after *Community Care Centers* and *Town of St. John,*" we read *Community Care Centers* to state that "the common benefit doctrine *is viewed as an extension to the common fund doctrine* and was created to allow an award of attorney's fees where the prevailing party 'substantially benefited' others even · though the prevailing party did not establish a fund or bring the action on behalf of a class." *Comm. Care Ctrs.*, 716 N.E.2d at 543 (emphasis added). The "common benefit" doctrine has been restricted in federal courts to cases where the benefit is easily quantifiable and conferred on a specific class, though Indiana courts have not specifically imposed such a limit on the common benefit doctrine. *Id.*

### C. Common Fund or Common Benefit?

■ Applying the above rules to the NIPSCO settlement, we note that a fund exists, as "ascertainable benefits [are being] given to an ascertainable number of beneficiaries." *Id.* at 547. The benefits are large, amounting to $225 million in credits. The number of beneficiaries is approximately 416,000, a number equal to the number of NIPSCO's electric customers. NIPSCO, "About NIPSCO" *at* http://econdev.nipsco.com/profile_f.asp (last visited June 25, 2004). Though CAC argues that the number and identities of consumers will change, NIPSCO will remain apprised of the number of customers it has. Thus, the number of beneficiaries in any given period will be ascertainable.

Moving to the three criteria stated in *Community Care Centers*, we note that the number of classes is small: the Industrials and other electric consumers. The benefits can be traced with accuracy: the settlement notes that NIPSCO will be crediting consumers' monthly bills. Appellant's App. p. 29. Thus, the credit given to any individual consumer may be traced to his or her bill. Finally, the

litigation costs can—with some exactitude—be shifted to those benefiting inasmuch as the $1.8 million is derived from credits that would otherwise flow to consumers. In sum, the record demonstrates that the funds in the escrow account constitute a common fund. As a result, CAC's challenge must fail.

### II. Eligibility for Fee and Expense Awards

■ In a reprise of an argument made in its previous appeal, CAC argues that the settlement prohibits objecting parties from petitioning the IURC for attorney fees from the escrow account. Specifically, CAC claims that in an order issued by the IURC on October 23, 2002, in response to the individual intervenors' petitions, the IURC effectively prohibited parties who did not sign on to the settlement from applying for attorney fees from the escrow account by stating that the settlement "does not permit them to recover their litigation expenses from a fund created by a document not only to which they object, but by which they wish not to be bound." Appellant's App. p. 99.

Once again, we are forced to admonish CAC that review of the IURC's decision on whether to award attorney fees and litigation costs from the escrow account cannot yet be made because CAC has not yet petitioned the IURC for attorney fees. *See Citizens Action Coalition*, 796 N.E.2d at 1271. Simply put, until CAC files *its own* petition for fees, we cannot address its claim. We believe that we made this point entirely clear in our first opinion when we stated:

> [F]rom the record before us and *counsel's acknowledgment at oral argument,* a petition for fees has not yet been made to the IURC. Consequently, no presentation to the IURC requesting fees was ever made. As a result, no review is possible.

*Id.* (emphasis added). Thus, CAC's claim may not yet be reviewed by this court.[2]

### III. Discovery Motions

■ CAC argues that the IURC abused its discretion when it forbade CAC from conducting discovery and cross-examination regarding the negotiations that culminated in the section of the Agreement providing for attorney fees. Specifically, CAC contends that the IURC wrongly denied its requests on relevancy grounds.[3]

First, CAC contends that the IURC erroneously denied its request to conduct discovery and elicit testimony from Wickes—the attorney who represented the Industrials in this cause—regarding settlement discussions and his mental impressions of the negotiations during the Industrials' hearing on attorney fees. CAC argues that the discovery it sought was relevant because it was attempting to (1) determine whether the Agreement was intended to establish a "common benefit" or "common fund," (2) ascertain whether objectors to the Agreement could apply for attorney fee awards, and (3) clarify whether NIPSCO customers had been adequately represented during the negotiations.

We note that evidence is "relevant" if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ind. Evidence Rule 401. The decision whether to admit evidence "is accorded a great deal of deference." *Fitch*

*v. Maesch*, 690 N.E.2d 350, 352 (Ind.Ct. App.1998). We will reverse a "ruling on matters of relevancy only where there is an abuse of discretion." *Id.*

CAC's initial rationale for making its discovery requests was to determine whether the Agreement provided for a "common fund" or "common benefit." As discussed in Part I, however, the evidence in the record—which does not include the discovery sought by CAC—established the existence of a "common fund." Additionally, the question of whether objectors may apply for an award from the escrow account has no connection with the *Industrials'* application for an award, as the Industrials did not object.

Finally, we note that CAC's attempt to determine whether consumers were well-represented during the agreement negotiations is but an effort to re-litigate an argument addressed in the first appeal, where CAC argued that courts should employ class action principles in determining the validity of the settlement "in order to assure that the class representatives and their attorneys were not 'selling out' the class members." *Citizens Action Coalition*, 796 N.E.2d at 1267. Accordingly, the law of the case doctrine prohibits relitigation of this issue. *Hopkins v. State*, 782 N.E.2d 988, 990 (Ind.2003) (holding that "[t]he law of the case doctrine mandates that an appellate court's determination of a legal issue binds the trial court and ordinarily restricts the court on appeal in any subsequent appeal involving the same case

---

**2.** We remind CAC that under Indiana Rule of Appellate Procedure 66(E), this court "may assess damages if an appeal, petition, or motion, or response, is frivolous or in bad faith." Though we choose to refrain from imposing such a sanction on CAC, we advise CAC to heed our statements in both this and our previous opinion that this issue is not yet ripe for review.

**3.** Given our conclusion that the IURC did not abuse its discretion when it found that the objects of CAC's requests were inadmissible on relevancy grounds, we need not discuss CAC's challenge to the IURC's decision that attorney work product privilege and Indiana Evidence Rule 408 barred the discovery requested.

and relevantly similar facts"). Accordingly, the IURC did not abuse its discretion when it denied CAC's discovery requests. Thus, CAC's challenge must fail.

## CONCLUSION

In light of the issues addressed, we conclude that the funds in the escrow account constitute a common fund, that CAC's argument with respect to attorney fees from the fund is not ripe for review, and that the IURC did not err when it denied CAC's discovery requests.

The IURC's order is affirmed.

FRIEDLANDER, J., and BAILEY, J., concur.