GOVERNMENT EMPLOYEES HOSPITAL ASSOCIATION, District Council 37 Health and Security Plan Trust, and Health Net, Inc., individually and on behalf of all others similarly situated, Plaintiffs,

v.

SERONO INTERNATIONAL, S.A., Serono Laboratories, Inc., Serono, Inc. RJL Systems, Inc. and Rudolph J. Liedtke, Defendants.

Eugene Francis, individually and on behalf of all others similarly situated, Plaintiffs,

v.

Serono Laboratories, Inc., Serono, Inc., RJL Systems, Inc. and Rudolph J. Liedtke, Defendants.

Civil Action Nos. 05–11935–PBS, 06–10613–PBS.

United States District Court, D. Massachusetts.

Nov. 7, 2007.

---

David S. Nalven, Thomas M. Sobol, Hagens Berman Sobol Shapiro LLP, Cambridge, MA, for Plaintiffs.

David M. Ryan, Dennis A. Murphy, Fred A. Kelly, Jr., Timothy W. Mungovan, Nixon Peabody, LLP, Boston, MA, for Defendants.

## MEMORANDUM AND ORDER

SARIS, District Judge.

### INTRODUCTION

Class plaintiffs have moved for (1) class certification; (2) approval of a final settlement agreement; (3) approval for the plan of allocation; (4) attorneys fees and expenses; (5) reimbursement to class representatives; and (6) miscellaneous class expenses (Docket No. 115). After hearing and supplemental submissions, the Court *ALLOWS–IN–PART* the motion with respect to (1) class certification, (2) settlement approval, and (3) approval for the plan of allocation, and defers determination of the remaining issues until the parties provide further submissions consistent with this Order.

### BACKGROUND

This nationwide class action was commenced shortly after defendant Serono Laboratories, Inc. pled guilty in December 2005 to charges that it fraudulently promoted the pharmaceutical drug Serostim. Serostim is a growth hormone approved to treat AIDS wasting, a condition marked by involuntary weight loss in AIDS patients. Among other things, class plaintiffs allege that Serono's fraudulent promotion caused consumers to make co-payments for a worthless drug and Third Party Payors ("TPPs") to make unnecessary expenditures.

The parties subsequently reached a settlement, and the Court granted preliminary approval. (*See* Docket No. 83). After an extensive notification program, the Court received only one written consumer objection to the amount of money in the consumer allocation and one letter from the office of the New York Attorney General concerning apportionment of litigation expenses, notice costs and attorneys fees. The New York Attorney General took the position that the Settling Health Plans ("SHPs"), which are TPPs that settled separately from the proposed class, should not be relieved of responsibility for attorneys' fees and litigation expenses. (Docket No. 102). No one appeared at the fairness hearing to object. At the hearing, held on October 9, 2007, the Court

inquired about class counsel's request for attorneys' fees of $3.3 million pursuant to Fed.R.Civ.P. 23(h)(1). This amount purportedly equals 25% of a portion of the settlement allocated to those who comprise the proposed Settlement Class,[1] which for purposes of calculating and paying the fee is set at $13.2 million. The total amount of the settlement is $24 million.

The settlement is quite complex, and involves two separate agreements. The first agreement is between the Serono defendants and the Settlement Class. Under this agreement, $2.4 million is specifically allocated to approximately 4,635 consumers in the Class who paid full cash or insurance copays out of pocket. This amount was expected to be sufficient to fully pay all of the claims of the consumer AIDS patients, although the actual claims filed have exceeded that amount.[2] Any excess was to be distributed as a cy pres fund. The agreement also initially allocates an amount to the TPPs in the Class of $10.8 million, which, as will be seen, is subject to certain conditions. There are over 43,000 TPPs in the Class.

The second agreement is a separate agreement between the Serono Defendants and the 47 large SHPs, which again are TPPs not within the Settlement Class. Under this agreement SHPs are initially allocated $10.8 million, subject to certain conditions. As a result, $21.6 million (the $10.8 million allocated to the 43,000 TPPs within the Settlement Class plus the $10.8 million allocated to the SHPs) of the $24 million settlement is allocated to TPPs.

Plaintiffs estimate that the SHP claims are worth nearly 70% of the value of all TPP claims. Thus, the settlement provides what the plaintiffs have called a "true-up" mechanism designed to accurately divide the total amount of money allocated to TPPs between the SHPs and the TPPs in the Settlement Class. (Pl. Approval Mem. at 8, 12; Memorandum in Support of Class Plaintiffs' Supplemental Motion for Final Approval of Proposed Nationwide Serono Purchaser Class Settlement et al. ("Pl. Suppl. Approval Mem.") at 7).

Plaintiffs describe the true up mechanism as follows. First, SHPs are given right off the bat an "upfront" "SHP Initial Payment" of $10.8 million, or half the amount allocated to TPPs.[3] (Pl. Approval Mem. at 12). The remaining half remains as funds for the Settlement Class, specifically funds for the "TPP Settlement Pool." (*Id.* at 13). Second, based on actual claims submitted, "SHPs could submit their unpaid amounts to the [TPP Settlement Pool] and recover in pro rata fashion to the class TPPs." (*Id.* at 8). This second, "back end" payment is called the "SHP Reversion Amount." (*Id.* at 13). Consequently, if SHP claims are indeed worth 70% of the value of all TPP claims, then SHP would be entitled to its full initial payment of $10.8 million (50%) plus a reversion amount of $4.3 million (20%). The TPP class members would receive the remaining $6.5 million.

The SHP Reversion Amount "is subject to a reduction for attorneys fees to Class Counsel at the same rate awarded by the Court to be paid to all TPPs claiming in the settlement." (Pl. Approval Mem. at 13). The SHP Initial Payment is not subject to any similar reduction. As a result, regardless of the amount reverted to the SHPs, the full amount of the $10.8 million initially allocated to the class TPPs will be used to calculate

---

1. The proposed Settlement Class is defined as

All individual persons or entities who, during the Class Period, made Serostim Purchases in the United States. Excluded from the class are the Settling Health Plans; the Serono Defendants, their respective present and former, direct and indirect, parents, subsidiaries, divisions, partners and affiliates; and the United States government, its officers, agents, agencies and departments, and all other government entities, to the extent that they previously released their claims pursuant to the 2005 Settlement Agreement and Release resolving the matter of *United States of America v. Serono*

*Laboratories, Inc.*, 05–CR–10282–RCL (D.Mass.) and all related litigation. (Memorandum of Law in Support of Class Plaintiffs' Motion for Final Approval of Proposed Nationwide Serono Purchaser Class Settlement ("Pl. Approval Mem.") at 25).

2. Plaintiffs have received claims from 382 consumers totaling in excess of $2.7 million.

3. The settlement provides that $2.8 million of the $10.8 million be held in escrow (the "SHP Escrow") in the unlikely event that the SHP claims are not worth 50% of all TPP claims.

and pay class counsel's attorneys fees. Assuming again that SHP claims are worth 70% of all TPP claims, then SHPs would pay approximately $1.1 million (25% of the $4.3 million reversion payment) in attorneys fees to class counsel. Class counsel contend that this payment constitutes a fair contribution by SHPs to compensate class counsel for the value they provided the SHPs in litigating this action.

### DISCUSSION

■ Class counsel argues that their request for fees, 25% of the class "common fund," is reasonable. (Class Plaintiffs' Memorandum of Law in Support of Counsel's Petition for Attorneys Fees et al. ("Fee Mem.") at 10–12). In some circumstances, 25% is a fair percentage of the common class funds to be paid to class counsel, *See In re Fleet/Norstar Sec. Litig.*, 935 F.Supp. 99, 109 (D.R.I.1996) ("In common-fund cases, the majority of attorney fee awards fall between 20% and 30% of the fund."); *Manual of Complex Litigation* § 14.121 ("Attorneys fees awarded under the percentage method are often between 25% and 30% of the fund."). Still, I have concerns about the proposed method of calculating fees.

Under the settlement, the SHPs are not members of the TPP class. Instead, they negotiated their own separate settlement agreement with the Serono defendants, and class plaintiffs expressly defined the TPP class to exclude them. To address the uncertainty of determining the percentage of the claims filed by SHPs as compared to all TPPs, the settlement allows SHPs to submit claims to the class pool and recover in pro rata fashion if the initial allocation turns out to be unfair or disproportionate. No objections have been filed to this "trueup" adjustment mechanism despite an extensive notification campaign. The settlement deems any amounts paid to SHPs under this "true-up" mechanism "class funds" for purposes of attorneys fees.

Typically, the amount of attorneys fees payable to class counsel is calculated based on a percentage of the pool going to TPP and consumer class members *only*. The SHPs have taken the unorthodox approach of effec-tively opting back into the class to receive a $4.3 million reversionary amount and have agreed to pay 25% of this amount as attorneys fees. However, they have paid no attorneys fees to class counsel for the initial lump sum payment of $10.8 million. If I reject this approach and calculate attorneys fees based only on "true" class funds, class counsel will receive $1.1 million less than they had initially estimated, and SHPs will pay *nothing* for benefitting from the class settlement. *See, e.g., In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 77 n. 18, 82 (D.Mass. 2005) (approving percentage of the fund award from settlement class fund of only $67 million, although "total actual Settlement fund is actually $75 million" due to separate settlement agreement of Settling Health Plans in that case).

Consequently, I have an overarching concern that the SHPs ultimately will not pay their fair share of class attorneys fees and expenses, and will free-ride off the efforts of class counsel. This is precisely the issue flagged by the New York Attorney General. The First Circuit has recognized that, to avoid "an incipient free-rider problem" a court "may employ measures reasonably calculated to avoid 'unjust enrichment of persons who benefit from a lawsuit without shouldering its costs.'" *See In re Nineteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litig.*, 982 F.2d 603, 606 (1st Cir.1992) (citing *Catullo v. Metzner*, 834 F.2d 1075, 1083 (1st Cir.1987)). Thus, "[i]f attorneys' efforts create or preserve a fund or benefit for others in addition to their own clients, the court is *empowered* to award fees from the fund." *Manual of Complex Litigation* § 14.11 (citing cases) (emphasis added); *see also Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980) (same).

*In re Nineteen Appeals* and its succeeding history is instructive. The litigation involved the consolidation of approximately 270 cases involving 2300 plaintiffs that arose from a fire at the San Juan Dupont Plaza Hotel. *In re Nineteen Appeals*, 982 F.2d at 605. The district court plucked attorneys from the various counsel to create an overarching Plaintiffs Steering Commit-

tee ("PSC") who "looked after the big picture," with the other individually retained plaintiffs' attorneys ("IRPAs") handling the particularities of individual cases. *Id.* The district court negotiated an aggregate settlement fund of approximately $220 million, with $66 million allocated for attorneys fees. *Id.* at 606–07. Although the First Circuit struck down the amount awarded to the PSC because the procedure for determining the amount violated due process, the First Circuit did consider the grant of a common fund fee award to the PSC "a proper exercise of judicial power" because of the PSC's "efforts on behalf of communal interests." *Id.* at 607 (citing cases).

Subsequently, the First Circuit reviewed the ultimate allocation determined by the district court in *In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295 (1st Cir.1995). There, the First Circuit held that "in a common fund case the district court, in the exercise in its informed discretion, may calculate counsel fees either on a percentage of the fund basis or by fashioning a lodestar," with the Court "recognizing that the discretion we have described may, at times, involve using a combination of both methods when appropriate." *Id.* at 307–08. The Court nevertheless found that the district court abused its discretion in awarding 70% of the attorney fee fund to the PSC, as the district court failed to take into account, among other things, the "labor-intensive" client services rendered by the IRPAs. *Id.* at 310. The Court ultimately calculated a percentage fee for the PSC of 50%, consistent with a prior, enhanced lodestar determination made by the district court. *See Id.* at 312–13.

Of course the settlement in this case does not mirror the fractious settlement in *In re Nineteen Appeals* and *In re Thirteen Appeals*. But both cases mirror this case in that the "common fund" at issue, as here, went to the benefit of distinct parties represented by separate counsel, with some counsel shouldering more responsibility than others. Class counsel argue that the "common

fund" for purposes of calculating their fee is the $13.2 million allocated to the Settlement Class. (*See* Fee Mem. at 2, 10). But the true common fund is the full $24 million negotiated to obtain the global settlement. *Cf. In re Thirteen Appeals,* 56 F.3d at 305 n. 6 ("While class actions furnish the most fertile ground for the [common fund] doctrine, its reach is not limited to such cases."). Class counsel's efforts on behalf of the Settlement Class certainly spilled over to the benefit of the SHPs.

For example, class counsel say they spent over a year obtaining and reviewing two million pages of documents produced by Serono defendants in preparation for depositions and class certification; consulting with whistleblowers; and working with economic and medical experts. (Pl. Approval Mem. at 4). They also drafted a 300 paragraph amended complaint. All of these efforts were to the benefit of all of the plaintiffs. In total, class counsel say they expended over 3300 hours at a total billed lodestar amount of $1,184.302.50. (Pl. Suppl. Mem. at 17). They also expended $47,089.21 in expenses. *Id.*

In contrast, the SHPs say they provided some services to class counsel, particularly with respect to the important issue of protecting the privacy of AIDs patients under state law. But many of the tasks performed by the SHPs seem to largely concern determining the claims and damages of the SHPs as opposed to the TPPs in the class. (*See* Class Counsel's Post–Fairness Hearing Memorandum Concerning ISHP Issues at 2–4).[4]

■ Overall, however, it is impossible for me to ascertain from the submissions filed how many hours were spent by SHP counsel which actually benefitted the class. Though the SHPs generally describe the tasks they performed, they declined to provide the amount they have paid their own attorneys on the unsubstantiated grounds of attorney-client privilege. (Affidavit of Richard W.

---

4. One exception is the work done by SHP counsel for class representative Government Employees Hospital Association prior to representing the SHPs exclusively. This work, of course, raises its own problems as to whether any meaningful arms-length negotiation took place in terms of fee allocation.

Cohen ¶ 19; Affidavit of Jeffrey C. Swann ¶ 8). The attorney-client privilege does not shield fee agreements. *Montgomery County v. MicroVote Corp.*, 175 F.3d 296, 304 (3d Cir.1999).

Thus, one can only guess as to the relative contributions of class counsel and SHP counsel. Imagine, for example, a situation where class counsel spent 90% of the time needed to establish liability (i.e. document review, investigation, and preparation for depositions). It seems unreasonable for the classes to pay 25% of its total class pool for attorneys fees and expenses. Shouldn't the SHP's pay based on a percentage of their recovery as well? While there was arms-length wrangling with Serono, it is worrisome that one of the attorneys for the class representative Government Employees Hospital Association is also an attorney for a SHP. (*See* Affidavit of Jeffrey C. Swann ¶¶ 3–4). How can I be sure there was arms length wrangling with respect to allocation for attorneys fees?

The bottom line is that the SHPs should be required to pay a proportionate share of the class attorneys fees, regardless of what the parties agreed to, but it is unclear from the record before me what that share should be. While class counsel relies on the common fund doctrine for its request for fees, (*see* Fee Mem. at 10), common fund cases "typically evince certain characteristics," such as:

> ease in identifying the persons, or classes of persons, benefitted by the recovery; ease in tracking the benefit flow; the ability to trace benefits with enough accuracy that, in the end, the flow chart inspires confidence; and *the ability to shift litigation costs with enough precision and reliability that cost and benefit are fairly proportionate to one another.*

*In re Nineteen Appeals*, 982 F.2d at 607 (citing *Boeing*, 444 U.S. at 478–79, 100 S.Ct. 745; *Alyeska Pipeline Co. v. Wilderness Soc'y*, 421 U.S. 240, 265 n. 39, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975)) (emphasis added). It is this last characteristic that is lacking in this case.

I recognize the difficulties inherent in settling pharmaceutical litigation where the SHPs consist of large payors such as the Blues, Aetna, Cigna and Humana, which represent over 70% of insured lives in this action. Understandably, a defendant would be reluctant to settle with a class of smaller TPPs if there was a likelihood of late stage opt-outs by large payors. Because of the leverage of the large payors a global settlement makes sense. Still, Rule 23 sets forth the parameters for class certification, and require that all awards of attorneys fees be "reasonable." *See* Fed.R.Civ.P. 23(h); *see also Manual of Complex Litigation* § 14.11 ("Federal Rule of Civil Procedure 23 limits attorney fees in class actions to those that are 'reasonable,' citing Rule 23(h)"). As *In re Nineteen Appeals* makes clear, the full settlement of $24 million should be treated as the common fund, and the Court should determine a fair percentage of the total amount to be paid to all the attorneys. Moreover, as *In re Thirteen Appeals* makes clear, any determination I make as to allocation must have some basis. Therefore, I need more information to ascertain whether the consumer and TPP classes are paying a fair amount compared to the SHPs.

### ORDER

Accordingly, with respect to class plaintiffs' motion for (1) class certification, (2) final approval of the settlement, and (3) the plan of allocation, I find that the proposed settlement class meets the requirements of Fed. R.Civ.P. 23(a) and (b), that notice was reasonable, and the settlement amounts for the two classes are fair. I thus ***ALLOW–IN-PART*** the motion to the extent of these findings. (Docket No. 115).

However, I decline to approve (4) class counsel's petition for attorneys fees and expenses, (5) for reimbursement to class representatives, and (6) for payment of miscellaneous class expenses. Instead, I defer determining a fair amount of attorneys fees until class counsel and SHP counsel propose a method of fairly compensating class counsel consistent with Fed.R.Civ.P. 23. Both class counsel and SHP counsel shall present a lodestar calculation clearly demonstrating the number of hours spent on liability and the hourly rate. In addition, SHPs shall bear their fair share of litigation costs.

Finally, given the fact that AIDS patients need the money, are a dying class, and are likely to receive about 60% of their claims, I suggest certifying and approving the consumer class [5] immediately so that claims can be paid and deferring certification of the TPP settlement class until I approve attorneys fees. Counsel shall inform the Court forthwith whether there is an objection to proceeding in this bifurcated manner.

5. I will approve the 25% attorneys fee for the consumer class. If later I find that the SHPs should make a contribution to the attorneys' fees, thereby reducing the percentage owed by the class, this amount can be redistributed to claimants.