In the

# United States Court of Appeals
## For the Seventh Circuit

Nos. 15-2164 & 15-2256

IRA HOLTZMAN, individually and as representative of a class,

*Plaintiff-Appellee, Cross-Appellant,*

*v.*

GREGORY P. TURZA,

*Defendant-Appellant, Cross-Appellee.*

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 08 C 2014 — **Robert W. Gettleman**, *Judge.*

ARGUED JANUARY 11, 2016 — DECIDED JULY 8, 2016

Before EASTERBROOK, WILLIAMS, and SYKES, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Attorney Gregory Turza tried to solicit business by sending fax advertisements to accountants. Three years ago we held that these faxes violated the Telephone Consumer Protection Act of 1991, 47 U.S.C. §227. *Ira Holtzman, C.P.A., & Associates, Ltd. v. Turza*, 728 F.3d 682 (7th Cir. 2013). The district judge had ordered Turza to post a fund of about $4.2 million, stating that he planned to distribute this sum to the class members and donate any re-

mainder to a charity. We reversed that part of the district court's order. We held that "this action stems from discrete injuries suffered by each recipient of the faxes; it does not create a common fund." 728 F.3d at 688. We remanded the case to the district court for further proceedings.

While that appeal was pending, Turza had posted a supersedeas bond. After losing on the merits he deposited $4.2 million into the court's registry. Invoking the common-fund doctrine of *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980), the district judge decided that class counsel gets a third of this money (about $1.4 million) as compensation for legal services. The Act authorizes an award of up to $500 per improper fax. 47 U.S.C. §227(b)(3)(B). The district court ordered two-thirds of that, or $333 per fax, sent to every class member. (The names and phone numbers of the persons and businesses that received the faxes are known; the court's order does not require class members to submit requests for payment.) If some class members fail to cash their checks, or if they have moved and cannot be tracked down, then there will be a second distribution. The maximum paid out per fax is to be $500. If money remains in the fund after counsel have received $1.4 million and all members who can be located (and take the payments) have received $500 per fax, the residue goes back to Turza. Both the class and Turza have appealed from these orders.

Turza contends that paying counsel based on the total value of the fund is inappropriate, and he's right. *Boeing* holds that counsel are entitled to be compensated from a common fund, but our 2013 opinion held that this is not a common-fund case. Class counsel maintain that our decision is mistaken, but it is the law of the case. Our decision cites

*Boeing*; it is not a new development or a controlling authority of which we were unaware. We thought then, and think now, that suits under the Telephone Consumer Protection Act seek recovery for discrete wrongs to the recipients. See *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 263–67 & n.39 (1975) (explaining the difference between common-fund cases and class actions that aggregate individual claims); *Snyder v. Harris*, 394 U.S. 332 (1969) (same); *Travelers Property Casualty v. Good*, 689 F.3d 714 (7th Cir. 2012) (same). Under our 2013 decision the $4.2 million represents security for payment, not a genuine common fund (see *Boeing*, 444 U.S. at 479–80 n.5).

If all class members claim their awards, this will make no difference. Under the American Rule for the allocation of attorneys' fees, litigants must cover their own legal costs. (The Telephone Consumer Protection Act is not a fee-shifting statute.) So the members of the plaintiff class must pay their lawyers, and none of the class members has appeared to contend that a third of the recovery is an excessive fee. This means that, of each $500 in damages for a given fax, counsel are entitled to about $167, and the fax recipient gets the rest. But if a given recipient cannot be located, or spurns the money, counsel are not entitled to be paid for that fax. The district judge held that Turza gets the money back, and awarding counsel $167 per fax when the class member gets nothing would be equivalent to treating the Act as a fee-shifting statute and requiring Turza to pay the class's attorneys just because he lost the suit.

The district judge ordered a second round of distributions, so that a class member could receive as much as $500 per fax (if some class members could not be located or did

not cash their checks). But that second round of distribution would be inconsistent with the American Rule on the allocation of legal fees. The statute authorizes a maximum award of $500 per fax, out of which counsel must be paid. Given the district court's conclusion that Turza is entitled to the return of the excess in the fund (which, to repeat, is only a security device), distributing more than $500 per fax ($333 to the recipient and $167 to counsel) would either exceed the statutory cap or effectively shift the class's legal fees to Turza. See *Pearson v. NBTY, Inc.*, 772 F.3d 778, 781–82 (7th Cir. 2014).

The class protests the district court's conclusion that any residue goes back to Turza. It would prefer to direct the money to a charity, as the district court had announced before our 2013 decision. This argument is of a piece with the class's contention that the $4.2 million represents a common fund. Given our conclusion that the class members have suffered discrete rather than undifferentiated losses, however, the money represents security for payment rather than a common fund. And once a debt has been satisfied, a security interest is released. So if X borrows from a bank and pledges stock as security, once X repays the loan the stock is returned; it is not given to charity.

We do not mean to foreclose the possibility of a *cy pres* distribution (as these charitable uses are called) in all cases with individual harms. Our original opinion observes that settlements sometimes provide that none of the money will be returned, and then the judge must do something with the residue. If the government does not demand escheat, a charitable distribution to an organization that will do some good for the class becomes attractive. And our 2013 decision did not hold that the absence of a settlement makes a *cy pres*

remedy impossible. A district judge might conclude that the inability to track down the current address of a victim who has moved should not automatically benefit the wrongdoer. But, for the reasons we gave in 2013, a judge is never legally obliged to divert money from the litigants to a charity. The district judge's decision that any surplus goes back to Turza cannot be called either a legal blunder or an abuse of discretion.

The judgment is affirmed in part (on the class's appeal) and reversed in part (on Turza's appeal), and the case is remanded for the entry of judgment consistent with this opinion.