In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-2086

CAMP DRUG STORE, INCORPORATED,

*Plaintiff-Appellant,*

*v.*

COCHRAN WHOLESALE PHARMACEUTICAL,
INCORPORATED,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Southern District of Illinois.
No. 3:16-cv-00488-SMY-RJD — **Staci M. Yandle**, *Judge.*

ARGUED NOVEMBER 9, 2017 — DECIDED JULY 27, 2018

Before RIPPLE, MANION, and SYKES, *Circuit Judges.*

RIPPLE, *Circuit Judge.* Camp Drug Store, Inc., filed this action, on its own behalf and as a representative of a proposed class, against Cochran Wholesale Pharmaceutical, Inc. ("Cochran"). Camp Drug Store alleged that Cochran had violated the Telephone Consumer Protection Act ("TCPA" or "the Act"), 47 U.S.C. § 227, by faxing unsolicited advertise-

ments to the class members. The parties entered into early mediation and reached a settlement. The district court approved the settlement on behalf of the class, but reduced the proposed attorney fee and incentive awards.

Camp Drug Store appeals. It maintains that the settlement created a common fund against which the reasonableness of the attorney fee award should be assessed. It also notes that the proposed incentive awards were commensurate with other awards to named plaintiffs for claims under the TCPA.

We cannot accept Camp Drug Store's characterization of the settlement as a common fund. Neither our case law, nor that of the Supreme Court, supports that characterization. Moreover, given the early stage at which this litigation was settled, the reductions in the attorney fee and incentive awards were not an abuse of discretion. We therefore affirm the district court's judgment.

# I

## BACKGROUND

Cochran, a small pharmaceutical distribution company in Monroe, Georgia, obtained a list of approximately 17,000 pharmacies. Using the list, it then sent faxes to prospective customers. It did not have permission from those to whom it sent faxes. Camp Drug Store was one of the recipients of the faxes and brought this class action under the TCPA, 47 U.S.C. § 227. Section 227(b)(1)(C) of Title 47 generally prohibits the sending of unsolicited advertisements by facsimile.  Its complaint was filed on May 2, 2016.

Before an answer was filed, the parties moved to stay the litigation for ninety days to explore settlement. In mid-October, the parties engaged in mediation, which produced a proposed settlement. According to the agreement, Cochran would "make up to $700,000.00 available to settle" the case, but was not required to create a separate account to hold the funds or to deposit them with the court.[1] Each class member could submit a claim for $125; if the dollar value of the claims exceeded the total available funds, each timely claim would be subject to a pro-rata reduction. Any funds that were not claimed by class members were to be kept by Cochran. The agreement further provided that each of the representative plaintiffs[2] was entitled to an incentive award of $15,000, and class counsel were to be paid "one third of the Settlement Fund ($233,333.33)."[3]

On December 7, 2016, the district court held a hearing to consider the preliminary approval of the settlement. At the outset, the court advised the parties that it had concerns about some aspects of the proposed settlement: the early stage of the litigation and the amount of work that had been done compared to the amount of attorneys' fees; the reversion of funds

---

[1] R.28-1 at 5.

[2] In addition to Camp Drug Store, ARCare became a second representative plaintiff. ARCare originally filed an action against Cochran in the district court for the Middle District of Georgia. The claims were consolidated for settlement, and ARCare was added as a named plaintiff in this action. *See* R.44 at 1.

[3] R.28-1 at 8.

to the defendant; and the means and timeline for notification.[4] The court explored each of these topics during the hearing. Specifically, counsel advised the court that no formal discovery had occurred, but that, in anticipation of mediation, Cochran had provided plaintiffs' counsel with its financials and a list of businesses to which it likely had faxed information. Counsel also informed the court that the action represented an uninsured risk to Cochran, a small family business. Finally, counsel clarified for the court that the settlement agreement did not guarantee plaintiffs' counsel one-third of the available funds; it simply allowed plaintiffs' counsel to petition the court for "up to one-third of 700[,000]."[5]

After discussing these issues with counsel, the district court formally appointed counsel and representatives for the class, elongated the time frame for notice and response, and preliminarily approved the settlement agreement. The court directed that plaintiffs' counsel file a motion for final approval by March 20, 2017, and scheduled a final hearing for April 19, 2017.

The settlement administrator sent the notice of the proposed settlement and the claim form to all class members, initially by fax and, if the fax was unsuccessful, by mail. Of the approximately 17,000 potential class members, 1,765 class members returned claim forms. No class members filed objections, and only twelve class members requested to be excluded from the settlement. The total amount of funds that Cochran paid to claimants was $220,625.00.

---

[4] *See* R.39 at 4–5.

[5] *Id*. at 20.

The plaintiffs subsequently filed a motion for final approval of the class settlement. According to the plaintiffs, the settlement was "fair, reasonable, and adequate," as required by Federal Rule of Civil Procedure 23(e)(2). With respect to fees, the plaintiffs requested that class counsel be awarded one-third of the $700,000 ($233,333.33) that had been made available for the settlement of the claims, as well as an additional $30,000 in out-of-pocket expenses attributable to mediation fees, costs of notice, and settlement administration. In support of this award, the plaintiffs noted that "[w]hen a class suit produces a fund for the class, it is commonplace to award the lawyers for the class a percentage of the fund."[6] "Here," the plaintiffs continued, "the Settlement created a common fund by agreement of the parties."[7] Consequently, the plaintiffs maintained that one-third of the settlement fund was an appropriate fee award.

The court considered the propriety of the final settlement at a hearing held on April 19, 2017. It evaluated the settlement against each of the factors set forth in *Isby v. Bayh*, 75 F.3d 1191, 1199 (7th Cir. 1996), namely:

> the strength of plaintiffs' case compared to the amount of defendants' settlement offer[;] an assessment of the likely complexity, length and expense of the litigation[;] an evaluation of the amount of opposition to settlement among affected parties[;] the opinion of competent counsel[;] and the stage of the proceedings and the

---

[6] R.41 at 12 (quoting *Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998)).

[7] *Id*. at 13.

amount of discovery completed at the time of settlement.

As it had in the preliminary hearing, the court expressed concerns about the requested attorneys' fees "[i]n terms of the stage of the proceedings and the amount of discovery."[8] The court observed that "there was no real litigation in this case. The case was filed. Counsel entered their appearance. They requested a stay. They began negotiations … . The case was stayed and then they announced a settlement."[9]

The court also was not persuaded that the $700,000 represented a common fund that inured to the benefit of the class. Instead, the court explained that "it was a security deposit."[10] The court stated that it would have agreed with the plaintiffs' argument "if the defendant plopped down $700,000 and sa[id], *This is it, now you can divvy this up with claims, attorneys' fees, costs, however you want to do it, but this is it*."[11] However, the settlement required reversion back to Cochran of any unclaimed amounts. The court, therefore, determined that it was more appropriate to award counsel thirty-three percent of the amount recovered by the class, or $73,000. In the court's view,

---

[8] R.45 at 7.

[9] *Id*. at 8–9.

[10] *Id*. at 18.

[11] *Id*. at 18–19 (italics in original).

even this amount was a "windfall" given the early stage of litigation at which the case had settled.[12]

The court also was not convinced by counsel's argument that the fee award should be higher because "the actual Lodestar in this case was $156,000."[13] The court rejected this argument because, although the lodestar can be an appropriate cross-check, counsel had provided only a summary of the number of hours spent on the case; counsel had not provided details or documentation regarding how the $156,000 in fees had accumulated given how little work was done on the case.[14]

With respect to the incentive award, the court noted that there were certain factors that it had to consider, including: "The actions that the plaintiffs have taken to protect the interests of the class; the degree to which the class has benefited from those actions; and the amount of time and effort the plaintiff expended … ."[15] Counsel then informed the court that the named plaintiffs' involvement was limited to reviewing the pleadings, discussing negotiations with counsel, and being available by phone on the day of the mediation. The court concluded that this minimal involvement did not justify the requested $15,000. The court, therefore, approved an incentive award of $1,000.

---

[12] *Id.* at 24.

[13] *Id*. at 25.

[14] *See id*. at 25–26.

[15] *Id*. at 12–13.

The district court's final order reflected these adjustments. In that order accepting the settlement and dismissing the action, the court reiterated that a fee of $233,333.33 was not appropriate in this case because the settlement did not create a "common fund."[16] It explained that the financial arrangement at issue here was not a "true common fund case[]" where "fees are awarded based on a percentage of the fund actually recovered"; instead, fees were determined based on "the maximum amount of money the defendant has promised to make available."[17] Additionally, the fee requested by counsel was not commensurate with the amount of work counsel actually had expended to resolve the case. The district court therefore awarded attorneys' "fees in the amount of $73,468.13, which represents 33.3% of the $220,625.00 claims payment."[18]

Similarly, "[i]n determining whether an incentive award is appropriate, and[] … in what amount," the district court "look[ed] to 'the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation.'"[19] The $15,000 incentive award did not reflect properly the amount

---

[16] R.44 at 5. In reaching its conclusion that the settlement did not create a common fund, the district court relied upon our decisions in *Holtzman v. Turza* (*Holtzman I*), 728 F.3d 682, 688 (7th Cir. 2013), and *Holtzman v. Turza* (*Holtzman II*), 828 F.3d 606, 608 (7th Cir. 2016), as well as the Supreme Court's decision in *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980).

[17] R.44 at 6.

[18] *Id*. at 7.

[19] *Id*. (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

of time and effort the named plaintiffs had expended in pursuing the litigation. Consequently, the court reduced the incentive award to $1,000 for each of the named plaintiffs.[20]

Camp Drug Store timely appealed the court's judgment with respect to attorney fee and incentive awards.[21]

## II

## DISCUSSION

The legal principles that must guide our decision today are well settled. A district court may approve the settlement of a class action only if it holds a hearing and finds that the proposed resolution "is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). One of the district court's principal responsibilities in undertaking this review is "to protect the members of a class … from lawyers for the class who may … place their pecuniary self-interest ahead of that of the class." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 279 (7th Cir. 2002). Indeed, we have characterized the role of "the district judge in the settlement phase of a class action suit [as] a fiduciary of the class, who is subject therefore to the high duty of care that the law requires of fiduciaries." *Id*. at 280. We evaluate how the court fulfilled this role for an abuse of discretion. *See Kaufman v. Am. Express Travel Related Servs. Co.*, 877 F.3d 276, 283

---

[20] *See id*. at 7–8.

[21] As agreed in the settlement, Cochran did not object to the plaintiffs' fee request, nor did it contest the incentive award. It takes no position as to these matters on appeal, with one clarification: "Cochran did not have an 'agreed obligation' to pay the full amounts in the event the District Court awarded less." Appellee's Br. 3.

(7th Cir. 2017). "Under this standard, we shall affirm the judgment of the district court whenever we believe that the district court chose an option that was among those from which we might expect a district court reasonably to choose." *Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 739 (7th Cir. 1998).

Here, Camp Drug Store maintains that the district court abused its discretion in reducing both the proposed attorney fee award and the incentive award for the named plaintiffs. We address first the attorney fee issue.

## A.

With respect to the attorney fee award, Camp Drug Store submits that the district court erred in failing to treat the $700,000 made available for claims as a "common fund." In its view, the Supreme Court's decision in *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980), compels that conclusion, and the district court erred in reaching a contrary decision by relying on our decisions in *Holtzman v. Turza* (*Holtzman I*), 728 F.3d 682, 688 (7th Cir. 2013), and *Holtzman v. Turza* (*Holtzman II*), 828 F.3d 606, 608 (7th Cir. 2016).

We cannot accept Camp Drug Store's characterization of the settlement here as creating a common fund. *Boeing* does not compel such a conclusion. In *Boeing*, a class of debenture holders brought an action against Boeing for failing to give them adequate notice of a redemption option. The district court entered judgment for the plaintiff class in "the principal sum of $3,289,359 together with [prejudgment] interest." 444 U.S. at 475–76 (alteration in original). The court fixed the amount that each member could recover on a principal amount of $100 in debentures and also provided that "[e]ach

individual recovery was to carry its proportionate share of the total amount allowed for attorney's fees, expenses, and disbursements." *Id*. at 476. Boeing appealed the attorney fee award claiming that the district court should have awarded attorney's fees only from the portion of the fund actually claimed by class members. An en banc Second Circuit disagreed, as did the Supreme Court. The Supreme Court explained that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Id.* at 478. Moreover, the criteria for a common fund are satisfied

> when each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump-sum judgment recovered on his behalf. … Although the full value of the benefit to each absentee member cannot be determined until he presents his claim, a fee awarded against the entire judgment fund will shift the costs of litigation to each absentee in the exact proportion that the value of his claim bears to the total recovery.

*Id*. at 479. In the case before it, the Court observed, "the named respondents ha[d] recovered a determinate fund for the benefit of every member of the class whom they represent[ed]," and Boeing had not appealed the judgment awarding the class a sum certain. *Id*. The class members' "right to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel." *Id.* at 480.

Notably, the court stated explicitly that its opinion did "not decide whether a class-action judgment that simply requires the defendant to give security against all potential claims would support a recovery of attorney's fees under the common-fund doctrine." *Id*. at 479 n.5. In the case before it, the district court explicitly had entered judgment in the amount of $3,289,359; "[n]othing in the court's order made Boeing's liability for this amount contingent upon the presentation of individual claims." *Id*.

*Boeing*, therefore, does not control our situation. The fund created by the settlement here did not establish, definitively, an amount for the benefit of the class members. Instead, Cochran pledged *up to* $700,000 to be made available for the satisfaction of claims. Cochran never surrendered the funds to the court or a third-party administrator, and, in the end, significantly less than the $700,000 was claimed. The settlement, therefore, fits squarely within the category of those that the Court opted not to address: "a class-action judgment that simply requires the defendant to give security against all potential claims." *Id*. Rather than establishing a common fund, this arrangement gives rise to a "claims-made" settlement. *See* William B. Rubenstein, 5 Newberg on Class Actions § 15:56, at 189 (5th ed. 2015) (describing "claims-made" settlements); *see also* William B. Rubenstein, 4 Newberg on Class Actions § 13:7, at 287–88 (5th ed. 2014) (same).[22]

_____

[22] As we already have noted, in determining that the settlement here was not a common fund case, the district court looked to our decisions in *Holtzman I* and *II*, which held that a class action involving claims under the TCPA "stems from discrete injuries suffered by each recipient of the faxes; it does not create a common fund." *Holtzman I*, 728 F.3d at 688; *see also Holtzman II*, 828 F.3d at 608 (stating that, "[w]e thought then, and think

Moreover, Camp Drug Store's reliance on *Boeing* and the common fund doctrine is misplaced for a more fundamental reason. Neither *Boeing*, nor any of our cases, dictate that class counsel is entitled to a certain percentage of a common fund. Instead, *Boeing* simply establishes the sum against which a district court measures the reasonableness of an attorney fee award. *See Boeing*, 444 U.S. at 473 ("The question presented in this class action is whether *a proportionate share* of the fees awarded to lawyers who represented the successful class *may be assessed* against the unclaimed portion of the fund created by a judgment." (emphasis added)). Even if a settlement is a common fund, the fee award still must be reasonable. *In re Sw. Airlines Voucher Litig.*, 799 F.3d 701, 708 (7th Cir. 2015) ("Under the 'common fund' doctrine, an attorney who recovers a common fund for the benefit of a class is entitled to a reasonable portion of the fund that is *made available* to the class rather than the amount actually *claimed* by the class." (citing *Boeing*, 444 U.S. at 478)).[23]

---

now, that suits under the [TCPA] seek recovery for discrete wrongs to the recipients" and therefore do not create "genuine common fund[s]"). Camp Drug Store argues that these holdings cannot be reconciled with *Boeing*'s description of a common fund and urges us to "clarify, limit or abrogate *Holtzman*." Appellant's Br. 22.

Even if we were so inclined, this case does not present an appropriate occasion to take such an action. As we have explained, even under *Boeing*, the case here is not a common fund. Cochran did not surrender a sum certain that inured to the collective benefit of the class.

[23] *See also, e.g.*, *Halley v. Honeywell Int'l, Inc.*, 861 F.3d 481, 496–97 (3d Cir. 2017) (describing methods for evaluating the reasonableness of attorneys' fees in a common fund case); *In re Life Time Fitness, Inc., Tel. Consumer Prot. Act (TCPA) Litig.*, 847 F.3d 619, 622–23 (8th Cir. 2017) (describing methods a district court may use to assess the reasonableness of an attorney fee

In assessing the reasonableness of an attorney fee award for a class action settlement, district courts should "do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. 2007) (quoting *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001)). Factors that bear on the market price for legal fees include the risk of nonpayment, the quality of the attorney's performance, the amount of work necessary to resolve the litigation, and the stakes of the case. *Id*. at 693.

Here, the court rightfully was concerned that the requested fee of $233,333.33 was disproportionate to the amount of work expended by class counsel on the litigation. Immediately after the case was filed, Cochran expressed interest in settlement. Cochran provided financials and customer-target lists to Camp Drug Store. There was no paper discovery; no depositions were taken; and no substantive motions were filed. As summed up by the district court, "[T]here was no real litigation in this case."[24] The district court concluded that class counsel's requested fee of nearly a quarter million dollars for merely filing a complaint and negotiating a settlement bore little relationship to market reality. The district court, therefore, reduced the fee to $73,468.13, or one-third of what the members of the plaintiff class actually

---

award and stating that "'[i]t is within the discretion of the district court to choose which method to apply,' as well as to determine the resulting amount that constitutes a reasonable award of attorney's fees in a given case" (quoting *Johnston v. Comerica Mortg. Corp.*, 83 F.3d 241, 246 (8th Cir. 1996)) (citations omitted)).

[24] R.41 at 8.

recovered. Given the paucity of effort expended by counsel compared to the size of the proposed fee, the district court did not abuse its discretion in concluding that the award be reduced accordingly.[25]

---

[25] Camp Drug Store argues that the district court also made an error in calculating the fee award. It maintains that the district court should have awarded class counsel one-third of the total amount that Cochran would have to pay out, which includes both the amount actually paid to the claimants *and* the amount of fees. *See* Appellant's Br. 24, 24 n.5. It relies on our decision in *Redman v. Radioshack Corp.*, 768 F.3d 622 (7th Cir. 2014), for the proposition that class counsel is presumptively entitled to that amount.

*Redman* considered an attorney fee award in the settlement of a class action alleging violations of the Fair and Accurate Credit Transactions Act. According to the settlement, the class members were to receive $830,000 worth of Radio Shack coupons. The settlement also included attorneys' fees of approximately $1,000,000 and administrative fees of approximately $2,200,000. In assessing the reasonableness of the requested attorney fee award, the district court compared the amount of attorney's fees to the total amount of funds paid out by Radioshack (which included the value of the coupons, attorneys' fees and administrative costs). The district court determined that, because the requested fees constituted twenty-five percent of the total payout, they were reasonable.

On appeal, we determined that the district court's reasonableness assessment was flawed because administrative costs should not have factored into its analysis:

> [T]he roughly $2.2 million in administrative costs should not have been included in calculating the division of the spoils between class counsel and class members. Those costs are part of the settlement but not part of the value received from the settlement by the members of the class. The costs therefore shed no light on the fairness of the division of the settlement pie between class counsel and class members.

The fee award of $73,468.14 was within a range of reasonable awards from which the district court could choose. Consequently, we affirm the district court's attorney fee award.

**B**.

Camp Drug Store also takes issue with the district court's reduction of the incentive award to the named plaintiffs. We review the award of an incentive payment to a lead plaintiff

---

*Id.* at 630. Instead, we held that "[t]he ratio that is relevant to assessing the reasonableness of the attorney's fee that the parties agreed to is the ratio of (1) the fee to (2) the fee plus what the class members received." *Id*. When the fee ($1,000,000) was compared to the appropriate basis ($1,000,000 plus $830,000 paid out in coupons), the result was a fee of 55% of the relief obtained, which was unreasonable. We therefore reversed the district court's judgment and remanded for further proceedings.

In later cases, we have employed this ratio as a basis for evaluating counsel's fee requests, *see Pearson v. NBTY, Inc.*, 772 F.3d 778, 781 (7th Cir. 2014), and have held that "a district court should compare attorney fees to what is actually recovered by the class and presume that fees that exceed the recovery to the class are unreasonable," *In re Sears, Roebuck & Co. Front-Loading Washer Prods. Liab. Litig.*, 867 F.3d 791, 793 (7th Cir. 2017).

Although *Redman*, *Pearson*, and *In re Sears, Roebuck & Co.* provide guidance for evaluating the reasonableness of fees, they do not establish that class counsel is entitled to fees in the amount of one-third of the actual class recovery (or, indeed, of any particular fraction of the actual class recovery). Here, the district court assessed the fee "[b]ased on the market for legal services in TCPA class cases, the quality of Counsels' performance in this case, … and the amount of work necessary to resolve the case," and determined that a fee of one-third of the amount of submitted claims was reasonable. R.44 at 6–7. For the reasons already stated, namely the very little amount of work required of counsel in this case, the fee was reasonable.

for an abuse of discretion. *See Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399, 408 (7th Cir. 2000).

"[A] named plaintiff is an essential ingredient of any class action." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). Therefore, "an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Id*. To determine if an incentive award is warranted, a district court evaluates "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Id*.

The district court determined that "[t]he named plaintiffs' involvement in the case prior to settlement d[id] not justify the requested $15,000 incentive award" for each class representative.[26] The court explained that

> [u]pon inquiry by the Court during the final fairness hearing, Counsel stated that representatives for the named Plaintiffs consulted with Counsel and provided information about the faxes they received prior to filing suit, reviewed the complaints before they were filed, were available by telephone during the mediation (but were not involved in the actual negotiations during mediation) and ultimately approved [the] proposed settlement.[27]

Thus, although "an incentive award [wa]s justified based on the named representatives' willingness to pursue the claims

---

[26] R.44 at 7.

[27] *Id*.

on behalf of the class," the district court concluded that $1,000 was a reasonable award "in light of the degree of their participation in the case and the amount of time and effort expended."[28]

Camp Drug Store does not maintain that its participation was greater than what the district court represented it to be. Instead, it alerts us to the fact that district courts in other TCPA cases have approved awards that are equivalent to, or larger than, the incentive award requested here.[29] Camp Drug Store, however, does not argue that its effort on behalf of the plaintiff class was commensurate with the lead plaintiffs' efforts in those cases, at least one of which spanned three years and involved significant discovery and motions practice.

Given how little exertion the named plaintiffs expended in pursuing this action, the district court's award of $1,000 was among the reasonable options from which the district court could choose. Consequently, there was no abuse of discretion, and we will not disturb the district court's incentive award.

## Conclusion

For the reasons set forth in this opinion, the district court's attorney fee and incentive awards were not an abuse of discretion. We therefore affirm its judgment.

AFFIRMED

---

[28] *Id.* at 7–8.

[29] Appellant's Br. 25.