**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DAVID LOWERY; VICTOR
KRUMMENACHER; GREG
LISHER; DAVID FARAGHER,
individually and behalf of themselves
and all others similarly situated,

*Plaintiffs-Appellees*,

v.

RHAPSODY INTERNATIONAL,
INC., a Delaware corporation,

*Defendant-Appellant*.

No. 22-15162

D.C. No.
4:16-cv-01135-
JSW

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the Northern District of California
Jeffrey S. White, District Judge, Presiding

Argued and Submitted December 9, 2022
Pasadena, California

Filed June 7, 2023
Amended August 2, 2023

Before:  Milan D. Smith, Jr., Daniel P. Collins, and
Kenneth K. Lee, Circuit Judges.

Order;
Opinion by Judge Lee

## SUMMARY[*]

### Copyright / Attorneys' Fees

The panel reversed the district court's award of attorneys' fees to plaintiffs' counsel in a copyright action and remanded.

Counsel filed a class action lawsuit on behalf of copyright holders of musical compositions and recovered a little over $50,000 for the class members from defendant Rhapsody International, Inc. (now rebranded as Napster), a music streaming service. The class members obtained no meaningful injunctive or nonmonetary relief in the settlement of their action. The district court nonetheless authorized $1.7 in attorneys' fees under the "lodestar" method.

Reversing, the panel held that the touchstone for determining the reasonableness of attorneys' fees in a class action under Federal Rule of Civil Procedure 23 is the benefit to the class. Here, the benefit was minimal. The panel held that the district court erred in failing to calculate the settlement's actual benefit to the class members who

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

submitted settlement claims, as opposed to a hypothetical $20 million cap agreed on by the parties.

The panel held that district courts awarding attorneys' fees in class actions under the Copyright Act must still generally consider the proportion between the award and the benefit to the class to ensure that the award is reasonable. The panel recognized that a fee award may exceed the monetary benefit provided to the class in certain copyright cases, such as when a copyright infringement litigation leads to substantial nonmonetary relief or provides a meaningful benefit to society, but this was not such a case.

The panel instructed that, on remand, the district court should rigorously evaluate the actual benefit provided to the class and award reasonable attorneys' fees considering that benefit. In determining the value of the "claims-made" class action settlement, the district court should consider its actual or anticipated value to the class members, not the maximum amount that hypothetically could have been paid to the class. The district court should also consider engaging in a "cross-check" analysis to ensure that the fees are reasonably proportional to the benefit received by the class members.

---

**COUNSEL**

Karin Kramer (argued), Quinn Emanuel Urquhart & Sullivan LLP, San Francisco, California; William B. Adams, Quinn Emanuel Urquhart & Sullivan LLP, New York, New York; Thomas C. Rubin, Quinn Emanuel Urquhart & Sullivan LLP, Seattle, Washington; for Defendant-Appellant.

Reuben A. Ginsburg (argued), Michelman & Robinson LLP, Los Angeles, California; Sanford L. Michelman, Michelman & Robinson LLP, Encino, California; Mona Z. Hanna and Jennifer A. Mauri, Michelman & Robinson LLP, Irvine, California; for Plaintiffs-Appellees.

## ORDER

Judges Smith, Collins, and Lee have voted to deny Appellees' Petition for Rehearing En Banc (Dkt. No. 36), filed June 21, 2023. The full court has been advised of the Petition for Rehearing En Banc, and no judge of the court has requested a vote. Appellees' Petition for Rehearing En Banc is DENIED. No future petitions for rehearing or rehearing en banc will be accepted.

The opinion filed June 7, 2023 (Dkt. No. 34) is amended, and the amended version has been filed concurrently with this order.

## OPINION

LEE, Circuit Judge:

This case will likely make the average person shake her head in disbelief: the plaintiffs' lawyers filed a class action lawsuit on behalf of copyright holders of musical compositions and ended up recovering a little over $50,000 for the class members. The lawyers then asked the court to award them $6 million in legal fees. And the court

authorized $1.7 million in legal fees—more than thirty times the amount that the class received.

We reverse and remand.  The touchstone for determining the reasonableness of attorneys' fees in a class action is the benefit to the class.  It matters little that the plaintiffs' counsel may have poured their blood, sweat, and tears into a case if they end up merely spinning wheels on behalf of the class.  What matters most is the result for the class members.  Here, the benefit from this litigation was minimal: the class received a measly $52,841.05 and obtained no meaningful injunctive or nonmonetary relief.

On remand, the district court should rigorously evaluate the actual benefit provided to the class and award reasonable attorneys' fees considering that benefit.  In determining the value of this "claims-made" class action settlement, the court should consider its actual or anticipated value to the class members, not the maximum amount that hypothetically could have been paid to the class.  The court should also consider engaging in a "cross-check" analysis to ensure that the fees are reasonably proportional to the benefit received by the class members.

## BACKGROUND

### I.    Rhapsody faces hurdles navigating the pre-Music Modernization Act compulsory licensing copyright regime.

Rhapsody International (now rebranded as Napster) offers music for digital streaming.  Rhapsody—like other online music services such as Apple Music or Spotify—must pay royalties both to the owners of the copyrighted musical compositions (as in this case) and to the owners of the copyright in the particular sound recording of that

composition.  *See Johnson v. Copyright Royalty Bd.,* 969 F.3d 363, 367–68 (D.C. Cir. 2020).

Before 2018, Rhapsody had two paths to get a license to play (or "copy and distribute" in copyright parlance) copyrighted music: (1) it could directly negotiate a voluntary license from the copyright owner, or (2) it could obtain a "compulsory license" through the procedures set by the Copyright Act.  *See* 17 U.S.C. § 115 (2010) (amended 2018). This compulsory licensing scheme required Rhapsody to serve a "notice of intention" on the copyright owner within thirty days after copying the work and before distributing it––or, if the copyright owner could not be identified, to file that notice with the Copyright Office.  *Id.* § 115(b)(1).

But this compulsory licensing system became unworkable in the digital music streaming era.  Rhapsody and other streaming services offer not only popular songs but also millions of other, often obscure, copyrighted songs. They thus struggled to serve or file a notice of intention for every one of the millions of works available on their services. *See generally* Kenneth J. Abdo & Jacob M. Abdo, *What You Need to Know About the Music Modernization Act*, Ent. & Sports Law., Winter 2019, at 5, 6.

In early 2016, David Lowery and other named plaintiffs sued Rhapsody on behalf of a putative class of copyright owners whose musical compositions were played on the streaming service.  The plaintiffs asserted that Rhapsody had infringed their copyrights by reproducing and distributing their musical compositions without obtaining a voluntary or compulsory license to do so.

## II. The legal landscape begins to shift in the copyright world.

By the time the plaintiffs sued, Rhapsody had been negotiating with the National Music Publishers Association (NMPA) to resolve the same copyright conundrum stemming from the antiquated compulsory licensing system. Rhapsody and the NMPA eventually reached a settlement. To receive payment under that settlement, copyright owners had to waive their right to make claims in this lawsuit against Rhapsody. Otherwise, the copyright holders would be double-dipping and receiving compensation from two settlements.

By April 2018, Rhapsody had informed the plaintiffs in this lawsuit about this NMPA settlement. It advised them that copyright holders of around 98% of the musical works available on its streaming service had opted to participate in the NMPA settlement, "effectively decimating" the putative class in this lawsuit. In other words, it became clear by April 2018 that this lawsuit would not yield much compensation, even if the plaintiffs prevailed.

## III. Rhapsody and the plaintiffs agree on a settlement that results in barely $50,000 in monetary relief to the class.

The parties devoted significant hours and resources to this case, but they focused on reaching a settlement rather than substantively litigating the claims. Within weeks after the plaintiffs filed their complaint, the parties stayed the litigation to pursue settlement. Except for a handful of discovery disputes and a motion to dismiss that was never decided, settlement talks dominated the parties' dealings.

In January 2019, Rhapsody and the plaintiffs finally executed a settlement agreement.  Rhapsody denied liability for copyright infringement but agreed to pay class members for musical compositions played on its streaming service.  In turn, the plaintiffs agreed that Rhapsody would pay a maximum of $20 million on class members' claims.  But probably because the NMPA settlement had gutted the potential class, very few class members submitted claims for this settlement.  In the end, Rhapsody paid only $52,841.05 to satisfy class members' claims.

The settlement agreement also required Rhapsody to establish an Artist Advisory Board with an annual budget of at least $30,000 to advance both parties' goals of protecting artists' rights and promoting Rhapsody's business.

The agreement did not require Rhapsody to make any other changes to its licensing practices: the Music Modernization Act (MMA) took care of that.  *See* 17 U.S.C. § 115(d) (2018).  While the parties litigated this case, Congress altered the legal landscape for licensing of copyrighted musical compositions when it enacted the MMA in October 2018.  Recognizing the cumbersome nature of the compulsory licensing system, the MMA allows digital music providers to obtain a blanket license.  *Id.*  One blanket license allows them to copy and distribute all musical compositions available for compulsory licensing. *Id.* § 115(d)(1)(B)(i).  No longer must they scamper to obtain thousands or millions of compulsory licenses.

## IV.  The district court awards over $1.7 million in attorneys' fees.

Under Rule 23 of the Federal Rules of Civil Procedure, parties must seek the court's approval of a class action

settlement as well as any request for attorneys' fees for class counsel.  Fed. R. Civ. P. 23(e), (h).

Our circuit allows two ways to determine attorneys' fees awards in class actions: (1) the "lodestar" method and (2) the "percentage-of-recovery" method.  *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 570 (9th Cir. 2019) (en banc).  Under the lodestar method, the court multiplies the number of hours reasonably spent on the case by a reasonable hourly rate.  *Id.*  Though the lodestar amount is presumptively reasonable, the court can then apply a positive or negative multiplier to that amount to ratchet the attorneys' fees up or down, depending on various factors.  *Id.* at 571–72.  By contrast, the percentage-of-recovery approach provides attorneys a percentage of the total settlement fund or amount claimed by the class.  *Id.* at 570.  The typical benchmark for the percentage-of-recovery approach is 25%, but a court can—as in the lodestar method—adjust that benchmark up or down.  *Id.*

Here, the plaintiffs' counsel calculated their fee request using the lodestar method and arrived at an approximately $2.1 million figure.  They then requested a 2.87 multiplier, claiming that they achieved "exceptional" results in a "difficult" and "complex" case.  In all, the plaintiffs' counsel asked the court to award them over $6 million in attorneys' fees.

The district court tasked the magistrate judge with evaluating the fees request.  The magistrate judge first reduced the lodestar to $1.7 million, noting that almost 20% of the hours spent on the case were unreasonable or improperly block-billed.  She then rejected the requested 2.87 multiplier, and instead applied a negative 0.5 multiplier to the lodestar, given the minor benefit to the class.  She

concluded that the class action settlement provided $358,903.77 in benefit to the class: besides the $52,841.05 paid to the class members, the magistrate judge included settlement administration costs of $251,400.72, class representative enhancement awards and travel reimbursements of $11,500, the Artist Advisory Board's annual budget of $30,000, and litigation costs of $13,162. After applying the negative 0.5 multiplier, the magistrate judge recommended awarding about $860,000 in fees to the plaintiffs' counsel.

The district court accepted the magistrate judge's lodestar calculation of $1.7 million but rejected her recommendation to apply a 0.5 negative multiplier. Stating that "no bright-line rule" exists to determine whether the "lodestar should be cross-checked against the claimed amount (here, $52,841.05) or the total amount of the cap placed on possible recovery (here, $20,444,567)," the district court declined to place a value on the benefit to the class. Instead, it concluded that it would apply no multiplier—positive or negative—to the lodestar amount, balancing two competing factors: "In an effort to find a sum that adequately reimburses Plaintiffs' counsel for the work they performed, but without the claimed amount [$52,841.05] coming even close to the agreed-upon cap for the settlement [$20 million], the Court finds that no multiplier at all would be the most appropriate measure." With that, the district court awarded over $1.7 million in attorneys' fees.

This appeal followed. We have jurisdiction under 28 U.S.C. § 1291.

## STANDARD OF REVIEW

We review a district court's attorneys' fees award for abuse of discretion and the factual findings supporting such an award for clear error. *Kim v. Allison*, 8 F.4th 1170, 1178 (9th Cir. 2021).

## ANALYSIS

The district court's fee award is not reasonable under Rule 23, given that the $1.7 million fee award is more than *thirty times* larger than the amount paid to class members. On remand, the district court must justify any fee award it makes by comparing it to the benefit provided to the class. In evaluating the benefit to the class, the district court must disregard the illusory $20 million settlement cap and focus instead on the approximately $50,000 paid to class members, along with any other benefits to the class. We also encourage the court to cross-check the fees against the benefit to the class and ensure that the fees are reasonably proportional to that benefit. That this is a copyright case makes little difference—attorneys' fees awarded under the Copyright Act must still be reasonably proportional to the benefit to the class.

**I.      The district court erred in approving $1.7 million in fees because this award is unreasonable given the small benefit to the class.**

District courts must ensure that attorneys' fees awards in class action cases are reasonable. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). When evaluating reasonableness, a district court must mainly consider the benefit that class counsel obtained for the class. *Id.* at 941–42. It must also provide an adequate explanation

for a fee award to facilitate appellate review, detailing "how it weighed the various competing considerations" supporting the award. *Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 739 (9th Cir. 2016). In particular, district courts awarding fees must expressly consider the value that the settlement provided to the class, including the value of nonmonetary relief, and explain how that justifies the fee award. *In re Bluetooth*, 654 F.3d at 943–45.[1]

### A. The district court must calculate the settlement's actual value to the class to assess the reasonableness of the fees.

The district court erred in failing to calculate the class action settlement's benefit to the class members. It acknowledged the glaring disparity between the amount paid to the class ($52,841.05) and the hypothetical settlement cap ($20 million), but did not resolve which number to consider, concluding instead that "there is no bright-line rule" governing this question.

We hold that courts must consider the actual or realistically anticipated benefit to the class—not the maximum or hypothetical amount—in assessing the value of a class action settlement. In *Kim*, we held that a district court

---

[1] We recognize that assigning a precise dollar amount to the class benefit may prove difficult where—unlike here—the relief obtained for the class is "primarily injunctive in nature and thus not easily monetized." *See In re Bluetooth*, 654 F.3d at 941. In such cases, the district court's assessment of the litigation's success will have to be more contextual than in a case like this one in which the fees-to-results ratio is readily calculated. *See id.* at 941–42; *cf. Roes, 1–2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1055 (9th Cir. 2019) (holding that, where the value of injunctive relief is too difficult to quantify, courts should exclude it from a common-fund calculation and instead consider it as a factor when determining what percentage of the fund is an appropriate award).

must compare the reasonableness of a fee award against the amount anticipated to be paid based on  existing claims (which was $45,000 in that case), not the maximum payable amount (which was $6 million).  8 F.4th at 1181–82.  We thus reversed a fee award because "the district court should have considered the amount of anticipated monetary relief based on the timely submitted claims," rather than the maximum amount that the defendant would have paid if all class members had submitted claims.  *Id.* at 1181.

On remand, the district court should disregard the theoretical $20 million settlement cap and instead start with the $52,841.05 that the class claimed.  This rule is especially important when the class redemption rate is low.  The plaintiffs' counsel had to know that the redemption rate— and thus the ultimate class recovery—would be extremely low here: there was no realistic possibility that the actual payout to class members would approach anywhere near $20 million, given that the NMPA settlement foreclosed many class members from making claims here.  Any other approach would allow parties to concoct a high phantom settlement cap to justify excessive fees, even though class members receive nothing close to that amount.  District courts have the responsibility to guard against such an outcome.  *See Chambers v. Whirlpool Corp.*, 980 F.3d 645, 658–59 (9th Cir. 2020).

The plaintiffs cannot rely on *Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980), to argue that the hypothetical $20 million settlement cap supports the district court's fee award.  In *Boeing*, the Supreme Court held that a fee award to class counsel could be calculated based on the entire settlement fund—even if part of the fund went unclaimed—because the defendant had been held liable for a "sum certain" of about $3 million no matter how many class members exercised

their right to make a claim. *Id.* at 478–79 & n.5. But the Court suggested that this holding would not apply if the amount of the defendant's liability had been "contingent upon the presentation of individual claims." *Id.* at 479 n.5.

Here, Rhapsody is not liable for any "sum certain" but only for the claims submitted. The settlement agreement established Rhapsody's willingness to pay up to $20 million if *necessary* to satisfy class members' claims. But Rhapsody never agreed to pay class members a penny more than the amount that class members claimed. Because Rhapsody's monetary liability remained contingent upon the amount claimed by the class, we join the Seventh Circuit in holding that *Boeing* does not govern a case like this one in which the defendant "did not surrender a sum certain that inured to the collective benefit of the class." *See Camp Drug Store, Inc. v. Cochran Wholesale Pharm., Inc.*, 897 F.3d 825, 832 & n.22 (7th Cir. 2018).[2]

---

[2] The plaintiffs' counsel cite *Williams v. MGM-Pathe Communications Co.*, 129 F.3d 1026 (9th Cir. 1997), to argue that we should consider the potential $20 million maximum recovery, not the actual amount claimed, in determining attorneys' fees. But the objection in *Williams* was that, where unclaimed amounts from a settlement fund would "be returned to the defendants," basing attorneys' fees on the total fund "would amount to prohibited fee shifting." *Id.* at 1027. We rejected that objection, because we concluded that such fee-shifting was contemplated by the parties' settlement agreement: the defendants "knew, because it was in the settlement agreement, that the class attorneys would seek to recover fees based on the entire . . . fund." *Id.* We did not address in *Williams* whether such a fee was "reasonable"; indeed, there is no mention of the "reasonableness" of the fees anywhere in our brief opinion in that case. Here, in contrast to *Williams*, the parties did not agree to the sort of arrangement that the parties did in *Williams*. And here, we are squarely presented with the question of the reasonableness of the fee award. Moreover, our subsequent caselaw precludes reading *Williams* as

In short, on remand the district court should value the settlement by starting off with the $52,841.05 payment to the class members, not the hypothetical $20 million cap.[3]

## B. On remand, the district court should consider cross-checking its lodestar calculation to ensure that it is reasonably proportional to the benefit provided to the class.

We have "encouraged courts to guard against an unreasonable result by cross-checking their [attorneys' fees] calculations against a second method." *In re Bluetooth*, 654 F.3d at 944–45 (comparing fees calculated using the lodestar method against a reasonable fee amount calculated using the percentage-of-recovery method). A cross-check can "assure that counsel's fee does not dwarf class recovery." *Id.* at 945 (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821 n.40 (3d Cir. 1995)). If the cross-check reveals that a contemplated fee award exceeds 25% of the benefit to the class, the court should take

establishing the sort of "mechanical or formulaic approach" that the plaintiffs' counsel advocate here, which would frequently produce an "unreasonable" fee award. *See Allen v. Bedolla*, 787 F.3d 1218, 1224 n.4 (9th Cir. 2015) (quoting *In re Bluetooth*, 654 F.3d at 944). Indeed, our recent case authority has emphasized that disregarding a low claims rate would result in unreasonable fee awards that are "disproportionate to the class benefit." *Kim*, 8 F.4th at 1181 (making this observation in the context of settlement approval).

[3]   Unlike the magistrate judge, the district court did not expressly consider whether or how to include settlement administration costs, the Artist Advisory Board, and class representative travel reimbursements and enhancement awards in its calculation of the benefit to the class. Nor do the parties address those issues in their argument before this court. We thus do not decide how the district court should treat these costs on remand.

a hard and probing look at the award because this disparity may suggest that the fee amount is unreasonable. *See id.*; *Johnson v. MGM Holdings, Inc.*, 943 F.3d 1239, 1242 (9th Cir. 2019).

Here, no matter the final valuation of the settlement, the $1.7 million lodestar amount will greatly exceed 25% of the value of the settlement. Indeed, it will be multiple times the settlement's value. And that is a major red flag that signifies that lawyers are being overcompensated and that they achieved only meager success for the class. *See In re Bluetooth*, 654 F.3d at 942 (stating that district courts should "award only that amount of fees that is reasonable in relation to the results obtained" (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 440 (1983))).

Except in extraordinary cases, a fee award should not exceed the value that the litigation provided to the class. *Cf. Pearson v. NBTY, Inc.*, 772 F.3d 778, 782 (7th Cir. 2014) (Posner, J.) ("[T]he presumption should . . . be that attorneys' fees awarded to class counsel should not exceed a third or at most a half of the total amount of money going to class members and their counsel."). No rational person would spend, say, $1 million in legal fees—and endure the hassles and headaches of litigation—to recover only relief that is a small fraction of that amount. Likewise, it is unreasonable to award attorneys' fees that exceed the amount recovered for the class, absent meaningful nonmonetary relief or other sufficient justification.

It does not matter that class action attorneys may have devoted hundreds or even thousands of hours to a case. The key factor in assessing the reasonableness of attorneys' fees is the benefit to the class members. *See In re Bluetooth*, 654 F.3d at 942. Here, the benefit to the class is meager. Not

only that, class counsel harbored little realistic probability that they would recover substantial compensation for the class.  It was clear by April 2018 that Rhapsody's NMPA settlement would likely gut the putative class here so that this lawsuit would yield only minimal financial recovery (and the plaintiffs never argued that their lawsuit somehow precipitated the NMPA settlement).  And it was obvious that no meaningful nonmonetary relief would be possible by October 2018 at the latest when Congress passed the MMA.  In short, an award of $1.7 million in attorneys' fees is unreasonable and not proportional to the benefit received by the class.

## II.     Even if the district court awards fees under the Copyright Act, it must consider whether the award is proportional to the benefit to the class.

The plaintiffs try to wave away our case law on reasonable attorneys' fees by arguing that courts have recognized that fees do not have to be proportional to the monetary recovery in some cases.

True, we have held that attorneys' fees awarded in civil rights cases need not be strictly proportional to monetary damages.  Even though damages in civil rights cases are often small, we have held that these lawsuits can provide considerable benefit to society through nonmonetary relief such as "ending institutional civil rights abuses or clarifying standards of constitutional conduct."  *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1209–10 (9th Cir. 2013).  Civil rights fee-shifting provisions thus "ensure that lawyers would be willing to represent persons with legitimate civil rights grievances."  *See City of Riverside v. Rivera*, 477 U.S. 561, 578–79 (1986) (plurality opinion).  In other words, civil

rights cases can provide significant nonmonetary and injunctive relief to plaintiffs.

But "the policies served by the Copyright Act are more complex, more measured, than simply maximizing the number of meritorious suits for copyright infringement." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 526 (1994). Therefore, because the "goals and objectives" of the statutes are "not completely similar," the Supreme Court has rejected an analogy to a civil rights fee-shifting statute when interpreting the Copyright Act's fee-shifting provision. *Id.* at 522–25.

We do the same here. District courts awarding attorneys' fees in class actions under the Copyright Act must still generally consider the proportion between the award and the benefit to the class to ensure that the award is reasonable. We recognize that a fee award may exceed the monetary benefit provided to the class in certain copyright cases, such as when a copyright infringement litigation leads to substantial nonmonetary relief or provides a meaningful benefit to society. But this is not such a case.

## CONCLUSION

We reverse the district court's attorneys' fees award of $1.7 million. On remand, the district court should determine the class action settlement's actual value to the class members and then award attorneys' fees proportional and reasonable to the benefit received by the class.

**REVERSED AND REMANDED**.