**NOT FOR PUBLICATION**
UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

**FILED**

AUG 18 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

ELJON LAKO, individually and on behalf of all others similarly situated,

Plaintiff - Appellant,

and

ARTHUR GARY LAFRANO; ADAM DOBAN,

Plaintiffs - Appellees,

v.

LOANDEPOT, INC.; ANTHONY HSIEH; PATRICK FLANAGAN; NICOLE CARRILLO; ANDREW C. DODSON; JOHN C. DORMAN; BRIAN P. GOLSON; DAWN LEPORE; GOLDMAN SACHS & CO. LLC; BOFA SECURITIES, INC.; CREDIT SUISSE SECURITIES (USA) LLC; MORGAN STANLEY SMITH BARNEY, LLC; BARCLAYS CAPITAL, INC.; CITIGROUP GLOBAL MARKETS, INC.; JEFFERIES LLC; UBS SECURITIES LLC; WILLIAM BLAIR & COMPANY, L.L.C.; JMP SECURITIES, LLC; PIPER SANDLER & CO.; RAYMOND JAMES & ASSOCIATES,

No. 24-3932

D.C. No.
8:21-cv-01449-JLS-JDE

MEMORANDUM*

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

INC.; NOMURA SECURITIES
INTERNATIONAL, INC.; AMERIVET
SECURITIES, INC.,

Defendants - Appellees.

Appeal from the United States District Court
for the Central District of California
Josephine L. Staton, District Judge, Presiding

Argued and Submitted August 11, 2025
Pasadena, California

Before: NGUYEN, FORREST, and VANDYKE, Circuit Judges.

Eljon Lako appeals the district court's final approval of a precertification class action settlement involving claims under Sections 11 and 15 of the Securities Act of 1933 and Sections 10(b) and 20(a) of the Securities Exchange Act of 1934. He claims the district court overlooked various signs of collusion and defects in the class action notice. We have jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

"We review a district court's decision to approve a class action settlement for clear abuse of discretion." *In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 778 (9th Cir. 2022). "Under this 'extremely limited' review, we will affirm if the district judge applies the proper legal standard and makes findings of fact that are not clearly erroneous." *Id.* (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 940 (9th Cir. 2011)). "Where, however, the parties negotiate a settlement agreement before the class has been certified, settlement

approval requires a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." *Roes v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048 (9th Cir. 2019) (cleaned up).

In addition, we "review the district court's decision to award attorney's fees and costs to class counsel, as well as the method of calculation, for abuse of discretion." *See In re Apple*, 50 F.4th at 778. Meanwhile, we review legal questions, such as whether notice of a proposed settlement satisfies due process, de novo. *Id.*

1. Lako claims that the notice was inadequate because it omitted or obfuscated key information about discovery, damages, and the status of certain class representatives. At the outset, these claims were never raised before the district court and are thus forfeited. *See, e.g.*, *G & G Prods. LLC v. Rusic*, 902 F.3d 940, 950 (9th Cir. 2018). And any potentially preserved claim lacks merit because the notice "generally describe[d] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard," thereby satisfying due process and the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(a)(7). *See Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012).

2. The district court did not abuse its discretion in approving the settlement. A district court reviewing a precertification settlement must explore

"comprehensively all factors," give "a reasoned response to all non-frivolous objections," develop "the record to support its final approval decision," and scrutinize "any subtle signs" of collusion that "infect the negotiations." *Roes*, 944 F.3d at 1043 (cleaned up).

Contrary to Lako's contentions, the district court applied *Bluetooth* and surgically addressed all his objections. It found no "explicit or subtle" signs of collusion. *Cf. In re Cal. Pizza Kitchen Data Breach Litig.*, 129 F.4th 667, 677 (9th Cir. 2025) (affirming approval even though *Bluetooth* red flags were present—unlike here—in light of district court's "hard look" at parties' claims). It also credited the role of a neutral mediator, informal discovery, and the "miniscule number of exclusions and a single objection" as factors weighing toward fairness. *See, e.g.*, *In re Bluetooth*, 654 F.3d at 948; *In re Mego Fin. Corp. Secs. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000).

Additionally, the district court met its "independent obligation to ensure that the award" of attorneys' fees "is reasonable." *See In re Bluetooth*, 654 F.3d at 941. It rejected class counsel's request for a 28% fee, finding no justification for an upward departure from the benchmark 25%. The district court conducted a "lodestar cross-check," too. *See id.* at 944–45. Its award of $875,000 in fees was therefore supported by "explicit calculations" and considerations of, "*inter alia*, the degree of success in the litigation and benefit to the class," and whether the

"calculations yield[ed] an unjustifiably disproportionate award." *Id.*; *see also In re Cal. Pizza Kitchen*, 129 F.4th at 678–79 (vacating attorneys' fees of "around 45% of the settlement value" in light of court's inadequate explanation); *Lowery v. Rhapsody Int'l, Inc.*, 75 F.4th 985, 991 (9th Cir. 2023) (rejecting award that was "more than *thirty times* larger than the amount paid to class members").

After sua sponte providing Lako "an opportunity to review and respond to [Plaintiffs'] expert [calculations]," the district court also ensured that the common fund settlement amount was not, as Lako claims, "too low." It found that the "$3.5 million settlement represents 11% of what [the Expert] Nye estimated the maximum recoverable damages to be—and a far greater percentage of Nye's more conservative estimate." It also credited Plaintiffs' evidence that "the median recovery in similar securities class action settlements was 8.5% of the maximum estimated recovery."

The district court then rejected Lako's arguments that the "expert's secondary calculation report should have included the May 3, 2021 corrective disclosure because there was a statistically significant decline in share price on May 7, 2021." Consistent with the premise that "a security is actively traded in an 'efficient market,' in which prices immediately reflect all publicly available information," *Miller v. Thane Int'l*, 615 F.3d 1095, 1103 (9th Cir. 2010), the second report, as the district court held, focused only on disclosures with a

statistically significant effect on the first impact date following disclosure, and the May 7th decline was preceded by four statistically *in*significant decreases.

Nor were the calculations otherwise improper. First, they did not erroneously limit Section 11 damages to "the period of time preceding the release of a second batch of shares after the IPO's lockup period ended." As the district court noted, "Lako himself concedes" that traceability issues arise when there is a "release of additional shares into the market due to the expiration of an IPO lock-up." *See also Slack Technologies, LLC v. Pirani*, 598 U.S. 759, 770 (2023). Second, the calculations reasonably excluded certain months from the Section 11 damages period that overlapped with the Section 10(b) period since "damages for shares purchased during the period in question are higher under Section 10(b) than under Section 11." And lastly, the district court properly rejected Lako's claims based on the Cornerstone Research, which does not apply to cases involving both sections 10(b) and 11 claims, as here.

3. The allocation plan was fair. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1284–85 (9th Cir. 1992). Lako raises several arguments alleging inconsistencies between the plan and the damages calculations. But as the district court held, there was a "reasonable basis for each challenged aspect." For example, because Section 11 damages were higher and easier to prove since they do not require scienter, the Plan reasonably assigned more inflation to shares

24-3932

bought right after the IPO.  In addition, Lako's qualms about disparate "per-share price inflation figures" mistakenly relied on Plaintiffs' secondary, more conservative damages estimate.  The final common fund value of $3.5 million, meanwhile, was based on Plaintiffs' *primary* estimate of $32 million.  That value therefore accurately reflected around 11% of the primary damages estimate.

4.  Lako's remaining arguments—including about the $5,000 service award to Plaintiff Doban, Doban's alleged in-and-out trader status, price maintenance theory under *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013), and absent class member declarations—have little merit and, critically, were never raised before the district court.  "Absent exceptional circumstances, we generally will not consider arguments raised for the first time on appeal."  *In re Am. W. Airlines, Inc.*, 217 F.3d 1161, 1165 (9th Cir. 2000); *see also  Alaska Airlines, Inc. v. United Airlines, Inc.*, 948 F.2d 536, 546, n.15 (9th Cir. 1991) ("It is well established that an appellate court will not reverse a district court on the basis of a theory that was not raised below.").  No such circumstance is present here.

**AFFIRMED**.